375 S.E.2d 405

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Gary MURRAY, defendant Below, Appellant.**

**No. 18017.**

Supreme Court of Appeals of West Virginia.

Nov. 10, 1988.

David C. Smith, Johnston, Holroyd & Gibson, Princeton, for Gary Murray.

Charles G. Brown, III, Atty. Gen., for appellee.

MILLER, Justice:

The defendant, Gary Murray, was convicted in McDowell County Circuit Court of first degree sexual assault of a minor child. He contends that the court improperly admitted extrajudicial statements made by the child approximately two weeks after the assault. We find the admission of the statements to be erroneous and prejudicial, and reverse the conviction.

### I.

Linda F.J.[1] is the daughter of Anita B.J. and Billy D.J. Linda was, at all times relevant to this case, nine years of age. She lived in the rural community of Switchback with her mother and the defendant.

On May 22, 1986, a secretary at Linda's elementary school in Switchback was informed that Linda was having difficulty in the restroom. She entered the restroom and saw Linda seated on a commode crying and in pain. When she inquired what was wrong, Linda responded: "Gary did this to me." Linda explained that while her mother was hospitalized some twelve days before, the defendant put a blanket over her head, pulled down her underwear, and "stuck his finger up in [her]." The secretary removed Linda's underwear and detected a heavy brown discharge and a foul odor.

Linda was accompanied to the office of the school principal, where she repeated her accusations. A protective service worker from the Department of Human Services was immediately summoned to the school. Linda reported to the worker that the defendant put his "thing," or penis, approximately one inch into her vagina. Linda was admitted to the hospital, where she was determined to suffer from gonorrhea and scabies, a contagious skin disorder. The defendant was arrested that day.

---

1. We follow the practice of prior cases involving sensitive facts, and decline to use the surnames of the parties. *E.g., Committee on Legal Ethics v. Douglas,* 179 W.Va. 490, 370 S.E.2d 325 (1988); *James G. v. Caserta,* 175 W.Va. 406, 332 S.E.2d 872 (1985).

The defendant was tried in September 1986. The State's case-in-chief was built principally on the testimony and extrajudicial statements of Linda, the child victim. The school principal and protective service worker were permitted to testify concerning Linda's statements made at the school on May 22, 1986. Furthermore, a deputy sheriff summarized the details of a statement he obtained from Linda in the course of his investigation of the case. Each of these witnesses repeated Linda's accusation that the defendant committed the assault and described, in Linda's own words, the circumstances of the assault. These statements came from interviews with Linda some two weeks after the sexual assault.

The defense theory of the case was that the assault was committed by Linda's father, Billy D.J. Some evidence offered by the defendant tended to show that Billy neglected Linda's needs and physically abused her. It was also shown that Linda had made a similar accusation of sexual assault against Billy prior to the defendant's arrest. Linda's mother stated that Linda was frequently untruthful and that she had recanted her accusations against the defendant. The defendant also offered evidence that he did not suffer from gonorrhea or scabies.

## II.

The State cites three bases to sustain the admission of Linda's extrajudicial statements. First, the State contends that the statements were, by definition, not hearsay. Specifically, it is said that the statements were not offered for their truth, but to show that such statements were made and that the witnesses responded reasonably to what Linda said.

This same argument was made, and rejected, in *State v. Golden,* 175 W.Va. 551, 336 S.E.2d 198 (1985). In *Golden,* an extrajudicial statement that directly implicated the defendant was admitted on the theory that it provided a basis or foundation for explaining the testimony of State witnesses. We held without citing any authority that the statement might be relevant for

that purpose, but that it was prejudicial in that it "went to the ultimate issue of [the] case." 175 W.Va. at 555, 336 S.E.2d at 202. Since the prejudicial effect of the statement "far outweighed its probative value," it should have been excluded. 175 W.Va. at 555, 336 S.E.2d at 202 (citing *State v. Peacher,* 167 W.Va. 540, 280 S.E.2d 559 (1981)).

Certainly, *Golden* cannot be read to sanction some new hearsay exception called "foundation testimony." We made it clear in *Golden* that the statement was not a "verbal act" as discussed in *State v. Greenlief,* 168 W.Va. 561, 285 S.E.2d 391 (1981), which allows proof of a prior statement without regard to its truth or falsity. *See* McCormick on Evidence § 249 (3rd ed. 1984); F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 8.3(G) (2d ed. 1986). It is obvious that Linda's extrajudicial statements were admitted to prove the truth of the matters asserted, i.e., the circumstances surrounding the sexual assault and the identity of the perpetrator.

■ Thus, we believe *Golden* controls the outcome here. Linda's statements at the school and to the deputy sheriff directly implicated the defendant as the perpetrator of the assault. Each of the State witnesses repeated the substance of Linda's accusations. The limited relevance of the statements was clearly overborne by the substantial potential for prejudice.

The State also contends that, assuming Linda's statements were hearsay, they were admissible as excited utterances. An excited utterance is defined by Rule 803(2) of the Rules of Evidence as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The theory on which the excited utterance exception rests is that "a guarantee of reliability surrounds statements made by one who participates in or observes a startling event, provided they are made while under the stress of excitement." *State v. Smith,* 178 W.Va. 104, 109, 358 S.E.2d 188, 193 (1987). We discussed the contours of the exception in Syllabus Point 1 of *Smith:*

"Rule 803(2) of the West Virginia Rules of Evidence correctly contains the heart of the hearsay exception that was formerly called a spontaneous declaration and which is now termed the excited utterance exception to the hearsay rule. The more detailed treatment of this exception contained in Syllabus Point 2 of *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980), is helpful to further refine the contours of the rule."

■ Syllabus Point 2 of *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980), referred to in *Smith*, provides a more comprehensive list of factors which are of assistance to us:

"An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

*See also State v. Ray*, 171 W.Va. 383, 298 S.E.2d 921 (1982).

■ Our law in this area follows the majority rule that out-of-court statements made by the victim of a sexual assault may not be introduced by a third party unless the statements qualify as an excited utterance under Rule 803(2) of the Rules of Evidence. *McRae v. State*, 383 So.2d 289 (Fla.App.1980); *People v. Walton*, 43 Ill. App.3d 74, 1 Ill.Dec. 849, 356 N.E.2d 1131 (1976); *State v. McIntyre*, 381 So.2d 408 (La.), *cert. denied*, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980); *State v. True*, 438 A.2d 460 (Me.1981); *People v. Pullins*, 145 Mich.App. 414, 378 N.W.2d 502 (1985); Annot., 89 A.L.R.3d 102 (1979).

■ Applying the principles from *Smith* and *Young*, we conclude that Linda's extrajudicial statements do not come within the excited utterance exception. It is undisputed that the statements were made almost two weeks after the assault. They cannot, therefore, be said to have been "spontaneous or instinctive" or to have been "dominated or evoked" by the assault.

The State attempts to overcome the remoteness of the statement by the introduction of a new startling event—the pain and distress incident to Linda's gonorrhea and scabies infection. It is asserted that the "circumstances of Linda's accusation ... satisfy at least the *spirit*" of the requirements set out in *Smith* and *Young*. We are not persuaded. It is axiomatic, as we said in *Smith*, that an excited utterance must "relate to" the startling event that prompted it. Linda's statements related to the circumstances of the assault, and not to her pain and distress.

■ Finally, the State urges the admission of the statements as evidence of the credibility and consistency of Linda's accusations. We have, in prior cases, approved application of the so-called "prompt complaint" rule. Under that rule, a witness may testify that a victim of sexual assault complained of the assault soon after its occurrence. Such testimony is strictly limited to *the fact* that a complaint was made, and may not devolve into the details of the complaint. We summarized the rule in *State v. Straight*, 102 W.Va. 361, 362, 135 S.E. 163, 164 (1926): "It is proper to show, as corroborative testimony, the fact that [the] prosecutrix made complaint of the outrage soon after its commission, but the particulars and the name of the person alleged to have committed the act should be excluded."

We note that this issue was also raised in *Golden* and rejected. Here, as in *Golden*, the State witnesses repeated the victim's statements in their entirety, including her identification of the defendant. Such testimony went far beyond the limits drawn by *Straight* and was, therefore, erroneous. Our law in this area is also in accord with a majority of jurisdictions that hold a prompt complaint made by the victim of a sexual offense is admissible independently of its qualifications as an excited utterance. However, the details of the event or the name of the perpetrator is ordinarily not admissible. *Urquhart v. State*, 273 Ark. 486, 621 S.W.2d 218 (1981); *People v. Meacham*, 199 Cal.Rptr. 586, 152 Cal.App.3d 142 (1984); *People v. Gallegos*, 644 P.2d 920 (Colo.1982); *People v. Witte*, 115 Ill.App.3d 20, 70 Ill.Dec. 619, 449 N.E.2d 966 (1983); *State v. True*, 438 A.2d 460 (Me.1981); *Commonwealth v. Sherry*, 386 Mass. 682, 437 N.E.2d 224 (1982); *State v. Daniels*, 222 Neb. 850, 388 N.W.2d 446 (1986); *State v. Ramos*, 203 N.J.Super. 197, 496 A.2d 386 (1985); *State v. Campbell*, 299 Or. 633, 705 P.2d 694 (1985); *Fisher v. Commonwealth*, 228 Va. 296, 321 S.E.2d 202 (1984); *State v. Ferguson*, 100 Wash.2d 131, 667 P.2d 68 (1983).

Having determined that evidentiary error was committed, we proceed to inquire whether such error warrants reversal. We find that the error was prejudicial. The prejudice that flowed from the three witnesses who formed the core of the State's case, all of whom repeated Linda's accusatory statements, is both obvious and substantial. The conviction must, therefore, be reversed.

### III.

While we reverse the conviction due to the erroneous admission of Linda's hearsay statements, it is necessary also to discuss the propriety of the procedure used by the court to protect the child witness. While the record is not precisely clear, it appears that the defendant was seated at the side of the bench, and that Linda's view of the defendant was physically obstructed by the bench.[2] The defendant contends this procedure violated his Sixth Amendment right to confrontation.

The Sixth Amendment guarantees that "[i]n all criminal proceedings, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. amend. VI. The right to confront witnesses is also similarly expressed in W.Va. Const. art. III, § 14. Historically, confrontation clause cases have dealt with limitations on the scope of cross-examination and the admissibility of extrajudicial statements. *E.g., Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). A recent decision by the Supreme Court has identified yet another dimension to the clause's protection: the right to face-to-face confrontation. *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988).

*Coy* involved the validity of an Iowa statute that permitted a child witness in a sexual assault case to testify behind a screen or via closed-circuit television. The defendant was charged with the sexual assault of two thirteen-year-old girls. The court, pursuant to the statute, approved the use of a screen to be placed between the defendant and the child witnesses. The screen enabled the defendant to dimly view the witnesses, but prevented the witnesses from viewing the defendant at all.

The Supreme Court, in an opinion by Justice Scalia, held that the use of the screen violated the defendant's Sixth Amendment confrontation right. The Court discussed in some detail the historical roots of confrontation, and concluded: "[T]here is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.'"

---

**2.** The record discloses that, prior to Linda's testimony, the court directed the defense attorney to "place the defendant where the child witness cannot see him directly." At another point in the record, it is reported that the defendant "sat in a chair where the child witness would not be able to see him while she was testifying."

487 U.S. at 1017, 108 S.Ct. at 2801, 101 L.Ed.2d at 865.

Like the correlative right to cross-examination, face-to-face confrontation serves to "ensur[e] the integrity of the fact-finding process." 487 U.S. at 1017, 108 S.Ct. at 2801, 101 L.Ed.2d at 866. Specifically, it lends an air of fairness to the proceedings, and permits the jury to observe the demeanor of the witness when confronted. Since the screen was calculated to have a direct impact on the confrontation right, its use was constitutionally impermissible.[3]

We have also recognized the constitutional significance of face-to-face confrontation in our own cases. In *State ex rel. Grob v. Blair*, 158 W.Va. 647, 653, 214 S.E.2d 330, 334 (1975), we quoted with approval this language from 21 Am.Jur.2d *Criminal Law* § 334 (1965):

"Confrontation in criminal law has been defined as the act of *setting a witness face to face with the accused* so that the latter may make any objection he has to the witness and the witness may identify the accused, and this must take place in the presence of the court having jurisdiction to permit the privilege of cross-examination." (Emphasis added).

■ We thus conclude, on the authority of *Coy* and *Blair*, that the right to confrontation assured by the Sixth Amendment and W.Va. Const. art. III, § 14 is violated where a witness testifies at trial and the defendant is denied the opportunity to confront the witness face-to-face.

It appears that the procedure used in the case at hand was a violation of the face-to-face component of the confrontation right. The defendant was so positioned by the court that he was unable to view the witness and the witness was unable to view him.

## IV.

We also discuss some of the evidentiary and instructional errors raised by the defendant since they may occur on retrial.

### A.

The defendant objected to testimony elicited during the State's cross-examination of Linda's mother, Anita B.J., that tended to show a history of mistreatment and neglect. Anita admitted that, on one occasion, she whipped Linda so hard that she left a hand print. She also admitted that she had not visited Linda since the child was placed in foster care. The defendant contends that the testimony was an improper attempt to impeach Anita's credibility.

■ Rule 608(b) of the Rules of Evidence[4] limits the admissibility of evidence of specific instances of conduct for the purpose of attacking the credibility of a witness. Such evidence may not be proved extrinsically, but may be inquired into by cross-examination of the witness.[5] Fur-

---

**3.** In *Coy*, the Supreme Court further remarked: "We leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy." 487 U.S. at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867. (Citations omitted). It also recognized that the doctrine of harmless constitutional error would apply to "denial of face-to-face confrontation." 487 U.S. at 1021, 108 S.Ct. at 2803, 101 L.Ed.2d at 867.

**4.** Rule 608(b) of the Rules of Evidence reads, in part:

"Specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of a witness other than the accused (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified."

**5.** It is sometimes said, in summarizing this limitation, that a questioner "must take" or "is bound by" the answer offered by the witness. If the witness admits the acts inquired into, the impeachment is complete and further evidence is unnecessary. If the witness denies the acts, the questioner may press the witness for an admission, but cannot introduce evidence to prove that his answer is false. F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 4.2(F) (2d ed. 1986); 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 608[05] (1988).

thermore, the evidence is admissible only "if probative of truthfulness or untruthfulness." *See State v. Richey,* 171 W.Va. 342, 349, 298 S.E.2d 879, 886 (1982); *see generally* F. Cleckley, Handbook on Evidence for West Virginia Lawyers § 4.2(F) (2d ed. 1986). The federal rule imposes similar limitations. *See, e.g., United States v. Fortes,* 619 F.2d 108 (1st Cir.1980) (sale of cocaine not probative); *United States v. Smith,* 792 F.2d 441 (4th Cir.1986), *cert. denied,* 479 U.S. 1037, 107 S.Ct. 892, 93 L.Ed.2d 844 (1987) (procurement of absence of material government witness); *United States v. Carlin,* 698 F.2d 1133 (11th Cir.), *cert. denied,* 461 U.S. 958, 103 S.Ct. 2431, 77 L.Ed.2d 1317 (1983) (falsehood in application for license); *see generally* J. Weinstein & M. Berger, Weinstein's Evidence ¶ 608[05] (1988).

We conclude that the testimony elicited from Anita was not probative of truthfulness or untruthfulness and was, therefore, inadmissible. Whether Anita was physically abusive and did not maintain contact with Linda once they were separated were matters that bore no relevance to her capacity to testify truthfully. The attempted impeachment was improper.

### B.

The defendant also objected to certain testimony that described Linda's physical condition at the school on May 22, 1986. In particular, the defendant complains of references to Linda's severe pain in the restroom and to the discharge discovered on Linda's underwear. He contends that the testimony was prejudicial and cumulative, and therefore excludable under Rule 403 of the Rules of Evidence.

Evidence of Linda's condition after the assault, notably the gonorrhea and scabies infection, was clearly relevant. The State was required to prove the corpus delecti, and the existence of a venereal disease in a minor child was probative of criminal wrongdoing. Furthermore, the testimony was corroborative of Linda's accusation of sexual assault.

Rule 403 provides, in part, that relevant evidence may be excluded if the probative value "is substantially outweighed by the danger of unfair prejudice ... or needless presentation of cumulative evidence." The testimony in question was undoubtedly sensitive in its nature, but we do not find its probativeness to be overborne by the danger of prejudice. We also do not find the testimony to be needlessly cumulative. While two witnesses spoke to Linda's condition, their statements did not emphasize the same points and were not unduly repetitive. We find no error.

### C.

Ten days prior to trial, the defendant moved the court to permit a psychologist to accompany him to a scheduled interview with Linda. This motion was orally denied. The defendant now asserts that the denial of the motion was improper.

As the defendant concedes, the decision whether to submit a sexual assault victim to a competency examination lies wholly in the court's discretion. *State v. Stacy,* 179 W.Va. 686, 371 S.E.2d 614 (1988); *Burdette v. Lobban,* 174 W.Va. 120, 323 S.E.2d 601 (1984); *State v. Driver,* 88 W.Va. 479, 107 S.E. 189 (1921), *overruled on other grounds, State v. Dolin,* 176 W.Va. 688, 347 S.E.2d 208 (1986). We note that the court questioned Linda extensively in camera and concluded that she was competent to testify. We have reviewed the transcript of the court's examination and find no abuse of discretion, which is our general standard for assessing the trial court's ruling on the competency

Such a limitation is consistent with prior West Virginia law. *State v. Simmons,* 148 W.Va. 340, 135 S.E.2d 252 (1964).

There are two principal reasons for this limitation. First, it operates to prevent the unnecessary confusion of issues and protraction of the case. Second, it eliminates the possibility of unfair surprise to the defendant, who may be ill equipped to defend against fabrications and distortions. 3A J. Wigmore, Evidence § 979 (Chadbourne Rev.1970).

We note also that Rule 608 permits cross-examination of a character witness as to specific acts committed by the defendant. *Cf. State v. Banjoman,* 178 W.Va. 311, 359 S.E.2d 331 (1987).

of a child witness. Syllabus Point 1, *State v. Jones*, 178 W.Va. 519, 362 S.E.2d 330 (1987); Syllabus Point 9, *State v. Watson*, 173 W.Va. 553, 318 S.E.2d 603 (1984).[6]

■ It appears, however, that the true thrust of the defendant's complaint is not directed at Linda's competency to testify. Rather, he complains that the inability to interview Linda with the assistance of an expert deprived him of due process. Specifically, he asserts that the lack of expert assistance unfairly advantaged the State, which had the benefit of such assistance. We are not cited nor have we found any authority which affords the defendant the right to expert assistance at a witness interview.[7] The motion was, therefore, properly denied.

### D.

On September 4, 1986, the defendant moved for the production of records concerning a prior abuse and neglect case against Billy D.J. in Delaware. The State did not comply with the motion. The protective service worker assigned to the case stated the reasons for the State's failure to comply: (1) the records requested by the motion were in the custody and control of Delaware; and (2) Delaware law required the consent of Billy, who was the custodial parent at that time, to order the release of such records.

■ Rule 16(a)(1)(C) of the Rules of Criminal Procedure limits a defendant's discovery of documents and tangible objects to those "which are within the possession, custody and control of the state[.]" As Professor Wright noted in speaking of the federal counterpart to this rule: "The government cannot be required to disclose

evidence that does not exist nor evidence that it does not have or control[.]" 2 C. Wright, Federal Practice & Procedure § 254 at 64 (1982). (Footnotes omitted; citing cases).

■ It is undisputed that the records requested by the defendant were not in the State's possession nor accessible by State authorities. Furthermore, we take judicial notice[8] of the fact that all such records were made confidential by operation of Delaware law. Del.Code Ann.tit. 16, § 905. We thus conclude that the records were not subject to discovery under Rule 16(a)(1)(C).

Also cited by the defendant are *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982), and *State v. Hall*, 174 W.Va. 787, 329 S.E.2d 860 (1985), cases that restate our rule mandating the disclosure of exculpatory evidence. We find the defendant's reliance on these cases to be misplaced because they are applicable only where the State "withholds" evidence. As we have earlier indicated, it is necessary that the State first have custody or control of documents before a duty to disclose them arises.

### E.

The defendant offered, and the court refused, a cautionary instruction which read: "The court instructs the jury that the charge of sexual assault in the first degree is an easy one to make and hard to disprove by one, be he ever so innocent."

This instruction is traceable to the works of Sir Matthew Hale, a 17th century English jurist. While it received some early support in this country, a sizeable majority of jurisdictions now hold that the giving of

---

6. The defendant also objects to the court's determination that Ricky J., Linda's six-year-old brother, was incompetent to testify. We also find, in view of the above-cited authorities, that the court did not abuse its discretion in this regard.

7. There was no argument made below that the expert was sought to testify in an area related to a defense theory or to rebut a prosecution's expert. W.Va.Code, 51-11-8. *See State ex rel. Foster v. Luff*, 164 W.Va. 413, 264 S.E.2d 477 (1980). It should be emphasized that in *Bur-*

*dette v. Lobban, supra*, we authorized the circuit judge to select the psychiatrist to assist him in making the competency determination. We did not intend that a defendant would have the right to challenge that psychiatrist by having his own make a further examination. In *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980), we discussed the law surrounding the psychiatric disability of a witness, but this issue is not raised.

8. W.Va.Code, 57-1-4; W.V.R.E. Rule 202.

such an instruction is improper. Annot., 92 A.L.R.3d 866 (1979).

The propriety of this instruction was discussed extensively by the California Supreme Court in *People v. Rincon–Pineda,* 14 Cal.3d 864, 538 P.2d 247, 123 Cal.Rptr. 119 (1975). The court set out two principal reasons the instruction was inappropriate. First, it was rendered unnecessary by modern developments in criminal procedure which afford substantial protection to the defendant. These include the presumption of innocence, proof beyond a reasonable doubt, and the panoply of rights secured by the Fifth and Sixth Amendments.

Second, the instruction's assumption that the charge of sexual assault is difficult to defend is not borne out by empirical data. With these considerations in mind, the court concluded: "A cautionary instruction bred in the circumstances of 17th century criminal rape and criminal justice need not be disinterred in a contemporary California courtroom in order to insure that a defendant faced essentially by a single accuser will not be casually convicted without due consideration of the relative weight of the evidence." 14 Cal.3d at 883, 538 P.2d at 260, 123 Cal.Rptr. at 132.

We subscribe to the conclusions of the California court in *Rincon–Pineda.* We note also that a defendant is adequately protected by an instruction, approved by our decisions, that the uncorroborated testimony of a victim is to be viewed with caution. *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981); *State v. Perry,* 41 W.Va. 641, 24 S.E. 634 (1896).[9] We thus hold that an instruction which cautions the jury that a charge of sexual assault or abuse is easy to make and difficult to defend should not be given. The court properly refused the instruction.

### F.

The remainder of the defendant's instructional errors are without merit. The defendant offered an instruction that would have directed the jury to find that he did not suffer from gonorrhea since there was no record that he had received treatment for gonorrhea. The instruction was predicated on the reporting requirements contained in W.Va.Code, 16–4–6.[10] Obviously, the lack of a record of treatment does not negate the possibility that the defendant was treated outside of West Virginia or under an assumed name, or that the reporting requirements were simply not followed.[11] The offered instruction was misleading and, therefore, properly refused under Syllabus Point 4 of *State v. Neary,* 179 W.Va. 115, 365 S.E.2d 395 (1987):

" 'Instructions in a criminal case which are confusing, misleading or incorrectly state the law should not be given.' Syllabus Point 3, *State v. Bolling,* 162 W.Va. 103, 246 S.E.2d 631 (1978)."

Another defense instruction would have informed the jury not to consider whether Linda would be returned home after the defendant's case was concluded.[12]

---

**9.** The defendant also claims that an instruction patterned on the *Payne* and *Perry* decisions was improperly refused. The court's refusal to give the instruction was presumably due to the corroboration provided by Linda's extrajudicial statements. As we have found these statements to be inadmissible, the court on remand must determine anew whether Linda's testimony is corroborated and a cautionary instruction is warranted.

**10.** W.Va.Code, 16–4–6, reads, in part:

"It shall be the duty of every practicing physician or other person who makes a diagnosis in, or treats a case of, syphilis, gonorrhea or chancroid, to make two reports of the case, as follows: One report shall be made to the local municipal health officer, if the party for whom the diagnosis was made or case treated lives within any municipality having a health officer, and if the municipality has no health officer, or if the party lives outside of a municipality, then to the health officer of the county in which such person lives; the second report shall be made to the director of health of the State. And every superintendent or manager of a hospital, dispensary, or charitable or penal institution in which there is a case of venereal disease shall report the same under like conditions."

**11.** The defendant testified at trial that he did not have gonorrhea.

**12.** The offered instruction read:

"The court instructs the jury that the issue of whether or not [Linda F.J.] should be re-

As the State suggests in its brief, this was an issue entirely unrelated to the criminal charge being tried. An instruction that is inapplicable to the issues of the case should not be given. *See State v. Hankish*, 147 W.Va. 123, 126 S.E.2d 42 (1962).

 The defendant also objected to the court's refusal to instruct the jury on lesser included offenses. He asserts first that Linda's testimony to the effect that he inserted his finger, and not his penis, would have supported an instruction on first degree sexual abuse under W.Va.Code, 61–8B–7.[13] The critical distinction between first degree sexual abuse and sexual assault is that the former requires "sexual contact," which is defined by W.Va.Code, 61–8B–1, to mean any "intentional touching ... of the anus or any part of the sex organs of another person or the breasts of a female eleven years or older[.]" The offense of sexual assault under W.Va. Code, 61–8B–3, requires "sexual intercourse" or "sexual intrusion," which is defined as the "penetration, however slight, of the female sex organ ... by an object...." W.Va.Code, 61–8B–1(8). Linda's testimony was that there had been a penetration of her sex organ. No witness offered a different version. There was, accordingly, no evidentiary conflict and Syllabus Point 2 of *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982), applies:

"Where there is no evidentiary dispute or insufficiency on the elements of the greater offense which are different from the elements of the lesser included of-

fense, then the defendant is not entitled to a lesser included offense instruction."

 The court also refused an instruction defining the elements of third degree sexual assault. We held in *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981), that third degree sexual assault was not a lesser included offense of first degree sexual assault. We recognized in *Daggett* that the two statutes had some commonality of elements and that the statutes "are inartfully drafted." 167 W.Va. at 433, 280 S.E.2d at 558. The first degree sexual assault provision, W.Va.Code, 61–8B–3(a)(2), applies to a victim who is eleven years old or less. The third degree sexual assault provision in W.Va.Code, 61–8B–5(a)(2), applies to a victim who is less than sixteen years old and who is at least four years younger than the defendant.[14] The defendant in this case could have been indicted under either of the above statutes. Having been indicted for the former, he was not entitled to an instruction on the latter.

For the reasons discussed above, the judgment of the McDowell County Circuit Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

turned to the home is not a [sic] issue in these proceedings, but rather will be determined in another proceeding at which time this court based upon all the facts and circumstances will act in the best interest of the child."

13. W.Va.Code, 61–8B–7, provides:
"(a) A person is guilty of sexual abuse in the first degree when:
"(1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or
"(2) Such person subjects another person to sexual contact who is physically helpless; or
"(3) Such person, being fourteen years old or more, subjects another person to sexual contact who is eleven years old or less."

"(b) Any person who violates the provisions of this section shall be guilty of a felony, and, upon conviction thereof, shall be imprisoned in the penitentiary not less than one year nor more than five years, or fined not more than ten thousand dollars and imprisoned in the penitentiary not less than one year nor more than five years."

14. A defendant committing one sexual act against a victim could not be convicted of both first and third degree sexual assault. *Commonwealth v. Brown*, 290 Pa.Super. 448, 434 A.2d 838 (1981); *State v. Whitfield*, 315 N.W.2d 753 (Iowa 1982).