584 S.E.2d 468

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Brandon JOHNSON, Defendant Below, Appellant**

No. 30903.

Supreme Court of Appeals of West Virginia.

Submitted April 8, 2003.

Decided May 6, 2003.

Dissenting Opinion of Chief Justice Starcher July 9, 2003.

Joseph E. Barki, III, Assistant Prosecuting Attorney, Wheeling, for the Appellee.

Franklin W. Lash, Wheeling, for the Appellant.

PER CURIAM.

This is an appeal by Mr. Brandon Johnson (hereinafter "Appellant") from a May 6, 2002, order of the Circuit Court of Ohio County sentencing him to forty-eight years in the penitentiary for aggravated robbery. The Appellant contends that such sentence is disproportionate and that the lower court erred in failing to permit evidence of the victim's admitted use of crack cocaine approximately eight hours prior to the victim's identification of the Appellant in a police photo line-up. Upon thorough review of the arguments, briefs, and record in this matter, we affirm the determination of the lower court.

I.  Factual and Procedural History

On July 13, 2001, Mr. Todd McAllister (hereinafter "victim" or "Mr. McAllister") was driving through a residential area of Wheeling, West Virginia. He testified that he stopped his vehicle at the behest of two young African–American males. He further testified that the Appellant then approached the vehicle and entered the passenger side

and requested money. The Appellant thereafter allegedly picked up the victim's paycheck from the car and pulled back his jacket to reveal a silver automatic pistol in the waistband of his pants. The other assailant then asked for additional money and pointed a revolver at Mr. McAllister. Mr. McAllister refused to provide more money and then drove away. As he left the scene of this incident, either the Appellant or his accomplice shot at Mr. McAllister's car. Two bullets hit Mr. McAllister, injuring his shoulder and thigh.

After leaving the scene, the victim traveled to a friend's home and smoked crack cocaine. Several hours later, the victim went to his wife's home. Mr. McAllister's wife convinced him to seek medical attention, and the hospital thereafter alerted the police. Mr. McAllister identified the Appellant from a photo array approximately eight hours after smoking the crack cocaine.

The Appellant was sixteen years of age at the time the alleged crime was committed. He was transferred to adult status subsequent to a December 11, 2001, transfer hearing. The Appellant does not challenge the transfer to adult status. In preparation for trial, the lower court granted the prosecution's motion in limine to suppress evidence of the victim's use of crack cocaine. A hearing was held on the motion in limine, and the lower court determined that the victim's use of crack cocaine had not affected the validity of the identification process. The Appellant was thereafter convicted of first degree robbery on April 4, 2002, and sentenced to forty-eight years in the West Virginia Penitentiary.

On appeal, the Appellant asserts two allegations of error: (1) the lower court erred in granting the prosecution's motion to suppress evidence of the victim's use of crack cocaine; and (2) the lower court erred in sentencing the Appellant to forty-eight years in the penitentiary.

## II. Standard of Review

With regard to the Appellant's contention that the lower court erred in excluding evidence of the victim's use of crack cocaine prior to the identification, this Court reviews that matter under an abuse of discretion standard. As this Court emphasized in syllabus point one of *McDougal v. McCammon,* 193 W.Va. 229, 455 S.E.2d 788 (1995),

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

We have also previously held that "[t]he action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 10, *State v. Huffman,* 141 W.Va. 55, 87 S.E.2d 541 (1955), overruled on other grounds, *State ex rel. R.L. v. Bedell,* 192 W.Va. 435, 452 S.E.2d 893; *see also* Syl. Pt. 4, *Riggle v. Allied Chem. Corp.,* 180 W.Va. 561, 378 S.E.2d 282 (1989).

With regard to this Court's review of the lower court's sentencing determination, this Court explained as follows in pertinent part of syllabus point one of *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997): "The Supreme Court of Appeals reviews sentencing orders ... under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." In syllabus point four of *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982), this Court stated: "Sentences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review."

## III. Discussion

### A. Evidence of Victim's Drug Use

On March 28, 2002, the lower court conducted a hearing in which the lower court addressed the State's motion in limine to exclude evidence regarding the victim's drug use prior to the identification procedure.

The victim testified that he had used the drug approximately eight hours prior to his identification of the Appellant in the photo spread and that the effects of the drug typically lasted only one-half hour. Detective Keith Brown also testified that based upon his experience as a police officer and his prior observation of individuals under the effects of crack cocaine, he did not believe that the victim was suffering from the effects of any drug as he participated in the photo lineup identification process. Based upon such testimony that the use of crack cocaine had not affected the validity of the identification process, the lower court concluded that evidence of use of crack cocaine, if introduced, could only be utilized to discredit the victim in an impermissible manner.

■■■■ Rule 608(b) of the West Virginia Rules of Evidence governs the admissibility of specific instances of conduct used to attack the credibility of a witness. Rule 608(b) essentially provides that evidence of specific bad acts is admissible only if probative of truthfulness or untruthfulness. *State v. Murray*, 180 W.Va. 41, 375 S.E.2d 405 (1988). Specifically, syllabus point six of *Murray* provides as follows:

> Rule 608(b) of the West Virginia Rules of Evidence limits the admissibility of evidence of specific instances of conduct for the purpose of attacking the credibility of a witness. Such evidence may not be proved extrinsically, but may be inquired into by cross-examination of the witness. Furthermore, the evidence is admissible only if probative of truthfulness or untruthfulness.

The purpose of the March 28, 2001, hearing before the lower court was to determine the effect of the crack cocaine use upon the victim's ability to make an accurate judgment regarding identification of the assailant in a photo lineup. In that sense, the hearing addressed the issue of the victim's truthfulness or untruthfulness, accuracy or inaccuracy. The evidence presented in that hearing, however, persuaded the lower court that the span of time between the use of crack cocaine and the identification diluted the impact of the crack cocaine use. The lower court found that the crack cocaine use had no impact upon the identification process, and no other evidence was presented to challenge the court's finding. Based upon our review of the evidence, we cannot conclude that the lower court abused its discretion in determining that the evidence of crack cocaine use several hours prior to the victim's identification of the Appellant did not affect the validity of the identification process, was irrelevant, and was inadmissible.[1]

### B. Evaluation of the Forty–Eight Year Sentence

■■■■ The Appellant also contends that the lower court violated Article III, Section 5 of the West Virginia Constitution by sentencing him to forty-eight years for aggravated robbery with a firearm. He maintains that the sentence is excessive and disproportionate to the character and degree of his offense. In syllabus point eight of *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980), this Court explained:

> Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offense."

Further, syllabus point five of *Wanstreet v. Bordenkircher*, 166 W.Va. 523, 276 S.E.2d 205 (1981), provides:

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

In attempting to apply the referenced principles to the sentence in the case sub judice, we must be cognizant that the lower court's

---

1. Moreover, the lower court correctly refused to admit the evidence based upon the fact that, under Rule 403 of the West Virginia Rules of Evidence, the probative value of the evidence would be substantially outweighed by its prejudicial effect.

sentencing order specifies that the forty-eight year sentence will be reviewed when the Appellant reaches the age of eighteen years. Thus, this case is procedurally unique to the extent that while the Appellant has been sentenced, the lower court has retained the authority to reexamine its determination when the Appellant attains the age of eighteen years. The Appellant's eighteenth birthday is April 24, 2003. The lower court stated specifically that another hearing would be held subsequent to the Appellant's eighteenth birthday for the purpose of "possible reconsideration or modification of the Defendant's sentence based on all reasonable records available since the Defendant's conviction." The retention of such authority is in compliance with West Virginia Code § 49–5–16(b) (1997) (Repl.Vol.2001).[2]

Consequently, in our examination of the Appellant's claims of disproportionality and excessiveness of sentence, we must acknowledge that the forty-eight year sentence may be reduced upon reconsideration subsequent to April 24, 2003. We therefore conclude that immediate examination of the Appellant's disproportionality challenge under the two methods of evaluation consistently utilized by this Court and succinctly expressed in State v. Cooper, 172 W.Va. 266, 304 S.E.2d 851 (1983), would be premature. Moreover, the authority to reevaluate the Appellant's sentence in light of the Appellant's behavior since his conviction lies squarely in the lower court. As West Virginia Code § 49–5–16(b) provides, it is incumbent upon the lower court to conduct an adequate investigation of the facts concerning the Appellant's post-conviction behavior to assess the advisability of reduction in his sentence. This method of imposing a sentence upon a juvenile and requiring reconsideration upon reaching the age of eighteen is utilized in an attempt to balance the special circumstances of juvenile

crime with the need to protect society from violent offenders. Indeed, the lower court's approach to sentencing the Appellant serves such a goal by initially imposing a substantial sentence while reserving the opportunity to reevaluate and reduce that sentence when the Appellant reaches the age of eighteen years.

Based upon the existence of further discretion within the lower court to adjust the Appellant's sentence subsequent to consideration of factors not presently before this Court, we decline to prematurely intervene in the sentencing process. We will permit the lower court an opportunity to perform its planned review and reevaluation. This Court is fully confident that the lower court will alter the substantial forty-eight year sentence if the Appellant, through his more recent conduct, demonstrates that a reduction in sentence would be advisable.

Affirmed.

STARCHER, C.J., dissenting.

(Filed July 9, 2003)

I dissent, because the majority has entirely missed the point on the central issue in this case.

Mr. McAllister was the main witness against Mr. Johnson. Mr. McAllister's credibility was a key issue in the case. On the prosecution's motion, the trial judge refused to let the jury hear facts about Mr. McAllister's story that made that story questionable. As a result, the jury did not get a fair chance to assess Mr. McAllister's credibility.

Mr. McAllister first began to claim to be the victim of a crime only *after* the hospital where he was being treated for a gunshot wound decided to call the police. Mr. McAllister then told the police he had been robbed while he was "stopped" in a rough neighbor-

---

**2.** West Virginia Code § 49–5–16(b) provides as follows:

No child who has been convicted of an offense under the adult jurisdiction of the circuit court shall be held in custody in a penitentiary of this state: Provided, That such child may be transferred from a secure juvenile facility to a penitentiary after he shall attain the age of eighteen years if, in the judgment of the court which committed such child, such transfer is

appropriate: Provided, however, That any other provision of this code to the contrary notwithstanding, prior to such transfer the child shall be returned to the sentencing court for the purpose of reconsideration and modification of the imposed sentence, which shall be based upon a review of all records and relevant information relating to the child's rehabilitation since his conviction under the adult jurisdiction of the court.

hood where he did not live. Mr. McAllister did not mention anything about a drug transaction occurring during this "stop." However, because the hospital's blood test showed that Mr. McAllister had recently been using crack cocaine, he did admit to having used cocaine. He claimed this drug use occurred *after* he was shot—although he did not say when and where he had acquired the drugs.

At trial, the defendant did not want to question the accuracy of Mr. McAllister's purported identification of the defendant. Rather, the defendant wanted to use the drug use evidence to argue that Mr. McAllister left work and went to a rough neighborhood, where he was involved in a drug deal that got violent—and that Mr. McAllister later *made up* the robbery story.

After all, what evidence was there, other than Mr. McAllister's testimony, that any robbery was ever committed?

The defendant's objection to the prosecution's motion *in limine* went not to the identification question, but was based on the defendant's right to confront his accuser, Mr. McAllister, with facts that undermined Mr. McAllister's claim that he was the victim of a crime in the first instance.

If the issue was solely the effect of the drug evidence on the issue of witness identification, I might agree with the majority. But the drug evidence had nothing to do with identification—and everything to do with the "victim's" motive to fabricate a crime in the first instance.

In summary, the jury was denied key evidence with which to assess Mr. McAllister's credibility, on the issue of whether any crime was ever committed.

The defendant was clearly denied a fair trial. I strongly dissent.