# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 14-1055** (Webster County 13-F-54**)**

**William L.E.**
**Defendant Below, Petitioner**

**FILED**

**October 13, 2016**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MEMORANDUM DECISION

Petitioner William L.E.,[1] by counsel Lori M. Waller, appeals the September 17, 2014, order entered by the Circuit Court of Webster County, West Virginia, denying Petitioner's post-trial motions and sentencing Petitioner upon his conviction for first degree sexual abuse and sexual abuse by a parent.[2] Petitioner was sentenced to a term of not less than five nor more than twenty-five years in the penitentiary for the first degree sexual abuse conviction and a concurrent term of not less than ten nor more than twenty years in the penitentiary for the sexual abuse by a parent conviction. Respondent State of West Virginia, by counsel Zachary Aaron Viglianco, filed a response and Petitioner filed a reply. Petitioner's only assigned error on appeal is whether Respondent failed to establish the corpus delicti of the

---

[1]Pursuant to West Virginia Rule of Appellate Procedure 40(e), we identify both the Petitioner and the child victim in this case by their initials. *See also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) (stating that "[c]onsistent with our practice in cases involving sensitive matters, we use the victim's initials. Since, in this case, the victims are related to the appellant, we have referred to the appellant by his last name initial. *See Benjamin R. v. Orkin Exterminating Co.*, 182 W. Va. 615, 390 S.E.2d 814 n. 1 (1990) (citing *In re Jonathan P.*, 182 W. Va. 302, 303, 387 S.E.2d 537, 538 n. 1 (1989)); *State v. Murray*, 180 W. Va. 41, 44, 375 S.E.2d 405, 408 n. 1 (1988).").

[2]Three motions to extend the time to file the appeal were filed with the Court due to the delay in getting trial transcripts.

crime beyond a reasonable doubt resulting in the Petitioner being unjustly convicted.[3]

Having thoroughly reviewed the appendix record, the parties' briefs and oral arguments, the applicable law and all other matters before the Court, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

In 2010, Petitioner and his wife divorced. They had a child, a son named W. L. E., who was four years old at the time of the crime (hereinafter "the victim" or "the child"). Petitioner had visitation rights with the victim as a result of the divorce. The events giving rise to the criminal charges occurred while the victim was visiting with the Petitioner on May 30, 2013. After that visit, the victim told his mother that the Petitioner had touched him inappropriately.

The victim's mother reported the child's accusation to the West Virginia State Police. On June 4, 2013, Corporal Wayne S. Louden of the West Virginia State Police ("State Police") undertook an investigation of the allegations made against Petitioner. Corporal Louden's investigation included interviewing the victim. The victim told the officer that "his dad had touched his pee bug and . . . described his father actually using his hand in a sideways motion to touch his pee bug."

Based upon the information received during the interview with the victim, Corporal Louden and Trooper Bostic, also with the State Police, went to Petitioner's home, where they were invited to enter. The officers obtained a written statement from Petitioner in which he told the officers that the victim had been with him over the weekend and that the victim "had slept in the same bed with him where he [Petitioner] had masturbated with . . . [the victim, who was] in the bed with him." Petitioner told the officers that if he had touched the victim's penis, Petitioner did so in his sleep. Petitioner also said that the only time he touched the victim's penis was when he had washed it for him because it was sore the last time the victim had been with Petitioner.

---

[3]Petitioner raised a second assignment of error, which concerned whether the trial court erred when it sua sponte struck exculpatory evidence. Petitioner, however, voluntarily chose to withdraw this assigned error and the Court granted the unopposed motion by order entered September 29, 2016.

On June 5, 2013, Petitioner was arrested, waived his *Miranda*[4] rights and gave a second verbal statement to the State Police, which was recorded. During this recorded statement, Petitioner stated that he was in bed masturbating and that the victim asked him what he was doing. Petitioner proceeded to place his hand over the victim's hand and together they grasped the victim's penis. Petitioner stated that he was teaching the victim how to masturbate. Petitioner said that at some point the victim's hand slipped off and as a result Petitioner's hand came into direct contact with the victim's penis. The entire process lasted about five minutes.

Both of the above-mentioned statements were admitted during trial.[5] The jury also heard the victim's statement to the State Police officer describing what his father had done to him. That statement, however, was admitted by the trial court to explain why the officers did what they did; the statement was not offered for the truth of the matter asserted. *See* W. Va. R. Evid. 801(c)(2). Respondent also presented the testimony of Crystal Knight, a clinical psychologist, who was trained to recognize sexual abuse. Ms. Knight testified that she did an evaluation of the victim and also did subsequent counseling "[t]o treat symptoms of sexual abuse." She testified that the victim exhibited signs of sexual abuse as follows: "He had difficulty leaving his mother. He got very anxious and refused to talk about his father. He had changes in mood quickly. He got upset very easily and had some behavioral problems."

As part of Petitioner's defense, both he and two other witnesses testified.[6] The

_____

[4]*See Miranda v. Arizona*, 384 U.S. 436 (1966).

[5]Petitioner filed a motion to suppress both statements he made to the State Police officers, claiming that he had been physically coerced into making the statement by a State Police officer striking him in the eye. After conducting a hearing, the trial court determined that the statements "were freely and voluntarily given" by Petitioner and that the recorded statement was given after Petitioner had been properly advised of his *Miranda* rights and waived those rights. Petitioner does not challenge on appeal the circuit court's denial of the motion to suppress the confessions.

[6]Vickie E., Petitioner's sister, testified that she had never seen Petitioner do anything inappropriate sexually with the victim; however, she also testified that she had only seen Petitioner one time in the four years prior to the events giving rise to the criminal charges in this case. She also testified that she never observed Petitioner "act inappropriately in any sexual manner." Additionally, Joe Bellemy, Petitioner's friend, testified that he observed Petitioner and the victim together on weekends. Mr. Bellemy stated that Petitioner never said sexually inappropriate things to him and he never saw Petitioner do anything sexually
(continued...)

3

Petitioner testified and denied doing anything sexually inappropriate with the victim, including teaching the victim how to masturbate. Petitioner stated that the victim's mother had a history of making false accusations against him and referenced an admonishment by the circuit court in the final divorce order wherein the circuit court "noted its displeasure in learning from CPS and law enforcement that respondent [referring to the victim's mother] recently attempted to make false allegations of child abuse against petitioner." Petitioner further testified that the mother made other "false" allegations against him, such as there being no running water in his house. Petitioner, however, admitted on cross-examination that this allegation was true. Petitioner also testified that one of the mother's cousins was a registered sex offender and that Petitioner had obtained a protective order for himself against the cousin. During cross-examination of Petitioner, he testified that even though he had obtained a protective order for himself against the cousin, he never included any allegations that the cousin had committed any sexual crimes against the victim. Petitioner further testified that, upon arrest, the State Police officers "tried to get . . . [him] to confess that . . . [he] had done this, and when . . . [he] wouldn't, . . . [the State Police officer] hit . . . him[]" in the eye. The evidence, however, failed to support Petitioner's testimony. Petitioner testified he did not know how long it took his eye to swell up after being struck by the State Police officer. Petitioner then recalled that he previously testified during a pre-trial hearing that it swelled up immediately and that it could be seen in his booking photo. Petitioner's booking photo, however, failed to support this. Petitioner then changed his story to his eye swelling shut two weeks later.

At the close of all the evidence and after deliberating, the jury found Petitioner guilty of both first degree sexual abuse and sexual abuse by a parent. On appeal, Petitioner argues that Respondent failed to establish the corpus delicti of the crime beyond a reasonable doubt.[7] According to Petitioner, the testimony of the victim's treating clinical psychologist did not provide a definitive cause for the victim's psychological problems. Further, Respondent

---

[6](...continued)
inappropriate with the victim.

[7]Petitioner raised this argument below in the form of a motion for a directed verdict and judgment of acquittal at the close of Respondent's case-in-chief, based upon Respondent's failure to prove the offenses alleged in the indictment. Petitioner again raised the issue in a post-trial motion when Petitioner moved the trial court to set aside the verdict and grant him a judgment of acquittal based upon Respondent's failure to offer sufficient proof.

4

failed to have the child testify and there was no physical or medical evidence of the crime.[8] According to Petitioner, "taking the State's evidence as [a] whole, there was no factual proof that . . . [the victim] was sexually abused by . . . [Petitioner], and thus, the State failed to establish the *corpus delicti* of the crime." Petitioner maintains that the only evidence that showed sexual abuse "may have occurred was . . . [his] extrajudicial confessions, which, by law, are insufficient to establish *corpus delicti.*"

Respondent contends that there is no requirement that a sexual assault be established by physical evidence or the testimony of the victim. Respondent argues that it introduced two different incriminating statements made by Petitioner and the corroborating evidence of Ms. Knight's opinion testimony in which she stated that, based upon her training and experience, the victim exhibited certain specific signs of sexual abuse.

The Court applies a de novo standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence. *State v. LaRock*, 196 W. Va. 294, 304, 470 S.E.2d 613, 623 (1996). As this Court has further explained:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved

---

[8]Petitioner's reliance on this Court's decision in *State v. Walter*, 188 W. Va. 129, 423 S.E.2d 222 (1992), for the proposition that "this Court held since there was no evidence of sexual intrusion or sexual intercourse, i.e. no *corpus delicti*, the conviction must be reversed[,]" and the suggestion that the *Walter* case "is similar to the instant case as there also is no evidence in the instant case the sexual abuse actually occurred[,]" is disingenuous. In *Walter*, the State confessed error on the first-degree sexual assault and incest convictions, based on "absolutely no evidence of sexual intercourse or intrusion, and such evidence is a necessary element of both first-degree sexual assault and incest." *Id*. at 132, 423 S.E.2d at 225. The Court also reversed the first-degree sexual abuse conviction because "[i]t is impossible to discern the degree to which" the first two convictions "infected the only remaining charge. . . ." *Id*. Thus, the defendant in *Walter* did not confess to any of the crimes charged and the case simply did not involve whether there was sufficient independent corroborating evidence to support the confession.

beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).  Moreover,

> [a] criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id*. at 663, 461 S.E.2d at 169, Syl. Pt 3, in part.

Petitioner's argument is predicated upon this Court's holding in *State v. Blackwell*, 102 W. Va. 421, 135 S.E. 393 (1926), wherein the Court held:

> A conviction in a criminal case is not warranted by the extrajudicial confession of the accused alone. The confession must be corroborated in a material and substantial manner by evidence aliunde of the corpus delicti. The corroborating evidence, however, need not of itself be conclusive; it is sufficient if, when taken in connection with the confession, the crime is established beyond reasonable doubt.

*Id*. at syllabus. The rule of law established in *Blackwell* is commonly called "the corroboration rule" and its purpose  is "to reduce the possibility of punishing a person for a crime which was never, in fact, committed."  *State v. Mason*, 162 W. Va. 297, 305, 249 S.E.2d 793, 798 (1978).  The *Blackwell* case involved forgery and uttering counts.  The State introduced the person whose name was forged, who testified that he did not endorse the check and did not receive any money from the check.  The State also introduced a voluntary written confession from the defendant wherein he confessed to forgery and uttering a check. The defendant did not testify, but evidence was introduced showing that insanity ran in his family and that "he had been abnormal and peculiar."  *Blackwell,* 102 W. Va. at 423, 135 S.E. at 393.  Likewise, several opinions from physicians were introduced, wherein they

6

opined that the defendant was deranged at the time of the forgery. *Id*. In rebuttal, the State introduced two non-experts who testified that they observed the defendant's conduct and it was normal. *Id.*

The Court, in *Blackwell*, found that the State proved the corpus delicti beyond a reasonable doubt, noting that "[a]ll that should be required of the State in such cases, is that there be such substantial corroborative circumstances as will, when taken in connection with the confession, establish the *corpus delicti* beyond a reasonable doubt." *Id*. at 424, 135 S.E. at 394. The Court further noted that "proof of the corpus delicti need not be as full and conclusive, in a case where the accused has confessed the crime, as otherwise would be required." *Id*.

The Court revisited the corroboration rule again in *State v. Garrett*, 195 W. Va. 630, 466 S.E.2d 481 (1995).[9] In *Garrett*, the Court held in syllabus point five that

> [t]he corpus delicti may not be established solely with an accused's extrajudicial confession or admission. The confession or admission must be corroborated in a material and substantial manner by independent evidence. The corroborating evidence need not of itself be conclusive, but, rather, is sufficient if, when taken in connection with the confession or admission, the crime is established beyond a reasonable doubt.

*Id*. at 633, 466 S.E.2d at 484, Syl. Pt. 5. In *Garrett*, the Court found that the confession was corroborated by the following evidence: the victim had disappeared; a neighbor had heard gunfire from the direction of the victim's home; the defendant was dropped off near the victim's home carrying a rifle and a handgun and was seen driving the victim's truck with bloodstains on his clothes; and, the medical examiner determined that a defect in the victim's bones that were found was consistent with a bullet. *Id*. at 641, 466 S.E.2d at 492.

In this case, we find the expert testimony of the clinical psychologist, who treated the

---

[9]In *State v. Murray*, 180 W. Va. 41, 375 S.E.2d 405 (1988), we found that evidence that showed the condition of the minor child victim after the sexual assault was relevant and not unduly prejudicial or cumulative under Rule 403 of the West Virginia Rules of Evidence as, "[t]he State was required to prove the corpus delicti, and the existence of a venereal disease in a minor child was probative of criminal wrongdoing." *Id*. at 49, 375 S.E.2d at 413.

child victim for symptoms of sexual abuse and who stated that the victim exhibited certain specific signs of sexual abuse, was "material and substantial" corroboration of Petitioner's confessions. *See id.* at 633, 466 S.E.2d at 484, Syl. Pt. 5, in part. As we held in *Garrett*, the corroborating evidence, i.e., the clinical psychologist's testimony, "need not of itself be conclusive." *Id.* Instead, the corroborating evidence "is sufficient if, when taken in connection with the confession . . . the crime is established beyond a reasonable doubt." *Id.* Hence, Petitioner's two confessions to the sexual abuse he inflicted on the child, in connection with the independent evidence of the clinical psychologist's testimony that she had treated the victim for sexual abuse and that the victim had exhibited specific signs of sexual abuse, support the trial court's determination that Respondent proved the corpus delicti in this case. *See id.* Likewise, this evidence sufficiently supports the jury's convictions in this case.

For the foregoing reasons, the circuit court's September 17, 2014, order is hereby affirmed.

Affirmed.

**ISSUED:** October 13, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II