362 S.E.2d 330

**STATE of West Virginia**

v.

**Martin L. JONES.**

No. 17374.

Supreme Court of Appeals of
West Virginia.

Oct. 22, 1987.

Charlie Brown, Atty. Gen., for the State.

Richard H. Lorensen, Lorensen & Ford, Lewisburg, for appellant.

NEELY, Justice:

This is an appeal from a first degree sexual abuse conviction of the appellant, Martin L. Jones, for having sexual contact with his six-year old daughter, Rachel Jones, resulting in his sexual gratification. At trial, the State presented its case by calling the appellant's daughter and the alleged victim, Rachel Jones, Rachel's foster mother, a Department of Human Services case worker, and a state trooper as witnesses. At the time of the trial Rachel Jones was seven years old. The court first questioned Rachel out of the hearing of the jury to determine her competency to testify. Rachel indicated that she knew the difference between right and wrong and that it was wrong to tell a lie. She also advised the court that she would tell the truth if placed under oath; whereupon the court found that Rachel was competent to testify.

The State then called Rachel to the stand and qualified her as a witness. On direct examination, Rachel stated that she knew the difference between right and wrong, that it was wrong to tell a lie and that it was right to tell the truth. On cross-examination, Rachel did not define the word truth, but testified that she would tell the truth. On redirect, Rachel stated that in telling the truth a person must tell "what has happened." She also defined telling a lie as telling "something that's wrong." The court then found Rachel Jones qualified to testify about the events underlying the sexual assault. The other three witnesses for the state's case corroborated Rachel's testimony, although none of them had discussed the alleged abuse with Rachel until nearly six months after its occurrence. Appellant was convicted by the jury and is now serving a one to five year sentence.

Appellant asserts on appeal that the trial court erred in allowing Rachel Jones to testify at all because she was an incompetent witness. Also, appellant asserts that the state trooper's testimony consisted of impermissible hearsay evidence used to bolster the credibility of the child witness on a material issue. We find merit to this latter assignment of error and reverse on that issue alone.

I

In *Wheeler v. United States*, 159 U.S. 523, 16 S.Ct. 93, 40 L.Ed. 244 (1895) the U.S. Supreme Court provided guidance for courts on the issue of competency of a young child as a witness:

… there is no precise age which determines the question of competency. This depends on the capacity and intelligence of the child, his appreciation of the difference between truth and falsehood, as well as of his duty to tell the former. The decision of this question rest primarily with the trial judge, who sees the proposed witness, notices his manner, his

apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review unless from that which is preserved it is clear that it was erroneous. 159 U.S. at 524–525, 16 S.Ct. at 93.

■ In accord with the "clearly erroneous" standard set out in *Wheeler, supra,* this Court has consistently held that the decision to allow or to refuse to allow a child's testimony is within the sound discretion of the trial judge, and will not be reversed on appeal unless there is a clear showing of abuse of discretion.[1] As we stated in Syllabus Point 9, *State v. Watson,* 173 W.Va. 553, 318 S.E.2d 603, 606: "The question of the competency of a child as a witness in any case is always addressed to the sound discretion of the trial judge, and if it appears that a careful and full examination as to the age, intelligence, capacity and moral accountability has been made by the judge and counsel and the trial judge has concluded that he is competent, the appellate court will not reverse the ruling which permits the evidence to be introduced unless it is apparent that it was flagrantly wrong."[2]

■ Applying the principles of *Watson* to the present case, we do not find any flagrant error in the trial court's allowing the appellant's daughter to testify. Rachel was seven years old and understood the obligation to speak the truth on the witness stand. She had an independent recollection of the events and understood the nature of the questions posed to her. Although she

had difficulty in discussing the details of the sexual assault, this was due to her embarrassment and not her inability to understand the act involved. Therefore, Rachel's difficulty in testifying is an issue of credibility for the jury to weigh and not an issue of competency for an appellate court to review.

## II

■ Appellant asserts that he was also prejudiced by the method of Rachel's testimony because the trial court allowed Rachel to testify while seated on her foster mother's lap. Because Rachel was able to testify at the earlier hearing without anyone seated near her, appellant argues, it would seem that she would be capable of testifying on her own at this present trial. However, there is no evidence in the record that the foster mother prompted the witness in any way.

The atmosphere at trial is unlike the intimate atmosphere of a pre-trial hearing. There is the additional presence of the jurors and other spectators. Also the nature of Rachel's testimony, coupled with the presence of the defendant caused Rachel extreme anxiety, as was demonstrated by her often confused testimony. The court may have allowed Rachel to sit on her foster mother's lap to keep the child from being distracted. In any event, we find no evidence of prejudice to Mr. Jones when the court allowed Rachel to testify while seated on her stepmother's lap.

## III

■ Finally, appellant asserts that the testimony of the state trooper was impermissible hearsay that had no independent

1. *See, State v. Watson,* 173 W.Va. 553, 318 S.E.2d 603 (1984); *State v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981); *State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545 (1981); *State v. Wilson,* 157 W.Va. 1036, 207 S.E.2d 174 (1974); *State v. Farley,* 125 W.Va. 266, 23 S.E.2d 616 (1942); *State v. Price,* 96 W.Va. 498, 123 S.E. 283 (1924); and *State v. Driver,* 88 W.Va. 479, 107 S.E. 189 (1921).

2. The tests of the competency of a young child as a witness consist of the following: (1) the

mental capacity, at the time of the occurrence concerning which he is to testify, to receive an accurate impression of the events; (2) a memory sufficient to retain an independent recollection of the occurrence; (3) the capacity to express in words his memory of the occurrence; (4) the capacity to understand simple questions about it; and (5) an understanding of the obligation to speak the truth on the witness stand. *See* Annotation, 81 A.L.R.2d 386, 390–398; Whitcomb, Shapiro & Stellwagen, *When the Victim is a Child,* National Institute of Justice, 1985, p. 33.

value but served only the purpose of bolstering the credibility of the child witness on the single material issue. The trial court permitted Trooper Butler to testify about a conversation he had with Rachel Jones six months after the alleged abuse and to explain by gestures what the child had told him. Rachel had refused to testify in any detail about the sexual assault beyond acknowledging that the sexual contact had occurred. The trial court allowed Trooper Butler's testimony to be admitted although there was no foundation to qualify Trooper Butler's testimony as coming within the excited utterance exception to the hearsay rule.

In *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980), we discussed the excited utterance or spontaneous exclamation exception to the hearsay rule in considerable detail and reiterated a six factor test that had been previously set out in *Ward v. Raleigh County Park Board*, 143 W.Va. 931, 105 S.E.2d 881 (1958):

> "An alleged spontaneous declaration must be evaluated in light of the following factors: (1) the statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize the event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) *it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design;* (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made. [Emphasis added].

In Syl.Pt. 1 of *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987) we pointed out that "Rule 803(2) of the West Virginia Rules of Evidence correctly contains the heart of the hearsay exception that was formerly called a spontaneous declaration and which is now termed the excited utterance exception to the hearsay rule ..." We then cited Syl.Pt. 2 of *Young, supra* with approval.

■ The excited utterance exception is predicated on the theory that a person stimulated by the excitement of an event and acting under the influence of that event will lack the reflective capacity essential for fabrication. *Sample v. Consolidated Light R.R. Co.*, 50 W.Va. 472, 40 S.E. 597 (1901). Statements made by the victim soon after an alleged crime are spontaneous and properly come within the excited utterance exception to the hearsay rule set forth in Rule 803(2) of the *West Virginia Rules of Evidence*. Usually, the length of time between the occurrence and the victim's statement decides whether the statement is admissible as evidence.[3]

In the present case, the state, citing *State v. Withrow*, 142 W.Va. 522, 96 S.E.2d 913 (1957), asserts that evidence of statements made by a child who has been sexually molested and describing the molestation are admissible under the excited utterance exception to the hearsay rule. However, in *Withrow*, the child's statement was made immediately after the alleged crime. In the case before us, Rachel Jones spoke to Trooper Butler six months after the alleged molestation took place and after having discussed the matter with both her grandmother and a case worker. Clearly that conversation does not fall within the rationale that permits the excited utterance exception to the hearsay rule.

---

3. *State v. Golden*, 175 W.Va. 551, 336 S.E.2d 198 (1985); *State v. Ray*, 171 W.Va. 383, 298 S.E.2d 921 (1982); *State v. Persinger*, 169 W.Va. 121, 286 S.E.2d 261 (1982); *State v. Mahramus*, 157 W.Va. 175, 200 S.E.2d 357 (1973); *State v. Withrow*, 142 W.Va. 522, 96 S.E.2d 913 (1957); *State v. Coram*, 116 W.Va. 492, 182 S.E. 83 (1935).

Because Trooper Butler had no evidence to offer independent of his interview with Rachel Jones, his entire testimony was impermissible hearsay and because it significantly bolstered the testimony of the only eye witness, its admission was obviously prejudicial. Accordingly, Mr. Jones' conviction for first degree sexual assault is reversed and the case is remanded for a new trial.

Reversed.