371 S.E.2d 614

**STATE of West Virginia**

v.

**Elmer STACY.**

**No. 18063.**

Supreme Court of Appeals of West Virginia.

July 18, 1988.

Kendrick King, Welch, for Elmer Stacy.

Charles G. Brown, Atty. Gen., Silas Taylor, Dist. Atty. Gen., Charleston, for state.

NEELY, Justice:

Elmer Stacy was convicted by a jury on 25 July 1986, of first-degree sexual abuse for sexual contact with a five-year-old girl. Defendant is a twenty-eight-year-old of limited intelligence [1] who was invited to live in the home by the victim's parents. The state relied almost exclusively on the victim's testimony that defendant touched her between the legs (through clothing), touched her "titties," and tried to kiss her. The state's evidence included the testimony of the victim's parents that their daughter told them defendant touched her in this manner and the testimony of a physician's assistant who examined the child two days later. The physician's assistant testified that the child's hymen was intact and that there was no evidence of sperm, but that there was "quite a bit of irritation in the vaginal area." He further testified that this irritation was consistent with the alleged sexual contact, but also that there were numerous other possible causes and that he receives many complaints of such irritation from young girls, particularly during warm months.

Before the child's testimony, the court conducted an *in camera* competency hearing. The court and both attorneys asked the child questions to gauge her intelligence, her ability to remember and relate facts, and her understanding of the necessity to tell the truth. The defendant's counsel argued that the child should be interviewed by an independent psychiatrist or psychologist to make a determination of the child's competency before allowing her to testify in accordance with our decision in *Burdette v. Lobban*, 174 W.Va. 120, 323 S.E.2d 601 (1984). The trial judge overruled the defendant's motion and allowed the child to take the stand. Defendant renewed his *Burdette* challenge in a motion to set aside the jury verdict, which motion was denied.

On appeal, defendant assigns as error the court's ruling on the victim's competence to testify, citing *Burdette*. We find merit to this assignment [2] and reverse.

In *Burdette*, the guardian *ad litem* of a five-year-old child in an abuse and neglect proceeding, under *W.Va. Code*, 49–6–1 [1977], *et seq.* sought a writ of prohibition against a circuit judge who ordered that the infant be interviewed by her father's counsel outside the presence of her guardian *ad litem*. After ruling that the child was statutorily entitled to the presence of counsel, this Court also stated:

> Often a child in an abuse proceeding is the only potential witness. Thus, the problem confronting any court at the outset of an abuse proceeding is whether the child is competent to testify against her parents. When dealing with adult witnesses, the issues of competency and credibility are separable. These distinctions become blurred in the case of a five-year-old, however. In some situations a child may be engaging in phantasy. For example, the child may desire to

---

1. Testimony suggested defendant is "closer to having the mind of a child or young teenager than that of an adult."

2. As we reverse this conviction on the *Burdette* issue, we need not address defendant's other assignments of error.

'hurt' the parent for a real or imagined grievance. In other cases, the child may be incapable of making rational judgments on his own without being unduly influenced by others. *See,* Note, "Lawyering for the Abused Child: You Can't Go Home Again" 29 *UCLA L.Rev.* 1216, at 1241–44 (1982).

Therefore, we understand a trial court's concern to determine that a child is a competent witness before she is allowed to be the prime accuser. To do this the court should appoint a neutral child psychologist or psychiatrist to inquire into the child's capacity.

*Burdette v. Lobban,* 174 W.Va. 120, 122, 323 S.E.2d at 603 (1984).

The requirement for this interview by a psychiatrist or psychologist under *Burdette* is not mandatory, but rather subject to the sound discretion of the trial judge and the facts of the case.

At common law, competency, decided by the judge, was strictly distinguished from credibility, which was determined solely by the jury. Generally,[3] there was a rebuttable presumption against competency for children under fourteen. Many states have enacted statutes establishing a rebuttable presumption against competency for children less than ten or fourteen.[4] This presumption can be overcome by showing the child is able to receive and relate accurately and truthfully the facts in question. The latter part of this test requires that the child understands the difference between truth and falsity and comprehends the legal and moral obligation to tell the truth.

We noted in *Burdette* that when dealing with infant witnesses, the issues of competency and credibility are not clearly separable. As the Supreme Court of Alaska pointed out in *McMaster v. State,* 512 P.2d 879 (1973), a case involving a five-year-old witness:

As a general rule it is said that the court is the judge of a witness's competency but that the credibility of a witness is a matter to be determined by a jury. However, competency to testify and credibility of a witness are concepts whose boundaries merge. When a judge decides that a witness is incompetent to testify, he is stating that the witness's ability to observe, to remember, to relate, or to be truthful is so impaired that his testimony is untrustworthy. When a witness is adjudged competent to testify, this merely means that he has some minimum ability to perform the four functions of a witness. It does not, however, mean that he will do so. Counsel for either party may, of course, attempt to impeach his ability to observe, remember, relate and tell the truth in each particular case. Thus competency and credibility are concepts which weigh the same factors in evaluating a witness's testimony. Whether a testimonial impairment renders a witness incompetent or merely impeaches his credibility is simply a matter of degree.

512 P.2d at 881, note 4.

The fact that the difference between competency and credibility is largely a matter of degree is inherently recognized by *FRE* 601[5] which establishes a general presumption of competency for all witnesses. After our decision in *Burdette,* this Court adopted the *West Virginia Rules of Evidence* effective February 1, 1985. Rule 601, "General Rule of Competency" tracks *FRE* 601 and states: "Every person is competent to be a witness except as otherwise provided for by statute or these rules." In addition, West Virginia's rape shield statute, *W.Va. Code,* 61–8B–11(c) [1984] provides: "In any prosecution under this article, neither age nor mental capacity of the victim shall preclude the victim from testi-

---

3. West Virginia presumed incompetency of children under fourteen. *State v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981).

4. *See* 60 ALR 4th 369.

5. *FRE* 601, titled "General Rule of Competency," reads:

Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which state law supplies the rule of decision, the competency of a witness shall be determined in accordance with state law.

fying." A strict reading of Rule 601, *W.Va. Rules of Evidence* would suggest that a judge is powerless to exclude any witness on grounds of competency. However, many courts implementing the federal counterpart of our rule still leave the question of competency to the discretion of the trial judge and allow a witness to be excluded on this basis should he be incapable of telling the truth or appreciating the significance of his oath.[6]

Professor Cleckley has examined the impact of Rule 601 and argues that the best approach for the trial judge is not to focus on the distinction between competency and credibility.

> "The plain meaning of Rule 601 appears to deprive the trial judge of any discretion whatsoever to exclude testimony on grounds of competency.... The preferable approach may be to focus the analysis not on general competency under Rule 601 but on relevancy under Rules 401 and 403."

F. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, 2.2(B) at 28 [1986].

Rule 401, *W.Va. Rules of Evidence*, defines "Relevant Evidence" and Rule 403[7] allows a trial judge discretion to exclude testimony should the danger of unfair prejudice substantially outweigh the probative value of the testimony.

With the presumption of competency established by Rule 601, we agree that the proper course is for the trial court to weigh the probative value of the evidence against the prejudice resulting from its allowance. However, the fact that Rule 601 has changed the terminology used to analyze the problem surrounding an infant's testimony does not significantly change the underlying problem.

In sexual abuse cases, it can be highly inflammatory for a jury to hear an infant speak of sexual abuse by a defendant. What juror will not tend automatically to believe a five-year-old when she says she was sexually abused? Yet to exclude the victim's testimony because of its prejudicial effect would make the prosecution of such cases nearly impossible because the victim's testimony is usually the mainstay of the state's evidence. We believe that the better course is to order an evaluation in accordance with our decision in *Burdette* when the balance of probative value versus prejudice of a child's testimony is a close question.

In *State v. Jones*, 178 W.Va. 519, 362 S.E.2d 330 (1987), we held that the trial judge did not abuse his discretion in finding a seven-year-old competent to testify against her father on a charge of first-degree sexual abuse. The crime in that case was committed in September, 1984, prior to our adoption of Rule 601. Therefore, our analysis of that case was made under the then existing common-law rules of competency.

In *Jones*, the witness was seven years old and understood the obligation to speak the truth on the witness stand. In addition, "She had an independent recollection of the events and understood the nature of the questions posed to her." 178 W.Va. at 521, 362 S.E.2d at 332. We cannot say in the case before us that the five-year-old

---

6. *U.S. v. Gutman*, 725 F.2d 417 (7th Cir.1984), *cert. denied* 469 U.S. 880, 105 S.Ct. 244, 83 L.Ed.2d 183 (1984), (Trial court has a duty in appropriate case to conduct competency hearing regarding witness's sanity, but judge did not abuse discretion in disallowing hearing in this case); *U.S. v. Odom*, 736 F.2d 104 (4th Cir.1984) (Can disqualify as incompetent a witness who does not have knowledge of the relevant facts, lacks the capacity to recall, or who does not understand duty to testify truthfully, but no error where trial judge found witnesses competent); *but see, U.S. v. McRary*, 616 F.2d 181 (5th Cir.1980), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 230, 73 L.Ed.2d 1307 (1982), ("Under the new Federal Rules of Evidence it is doubtful that mental incompetence would even be grounds for disqualification of a prospective witness." Error peremptorily to exclude witness's testimony.)

7. Rule 403, titled "Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time," reads: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

witness here understood the nature of the questions posed to her.

Recently, in *State v. Ayers*, 179 W.Va. 365, 369 S.E.2d 22 (W.Va.1988), an appeal from a conviction of first degree sexual assault and incest, we held that the trial judge did not abuse his discretion in failing to grant defendant's motion for an independent psychiatric competency evaluation. In *Ayers*, the victim (H) was seven years old and was playing with her cousin when she began to cry and said that her stepfather, the defendant, had sexually assaulted her. Two days later the child was taken to the family physician who recorded her history. H stated that her stepfather attempted intercourse with her on seven occasions. She graphically detailed her stepfather's actions and stated that penetration had occurred on three occasions during the previous week.

A week later, H was hospitalized for 12 days for an adjustment disorder precipitated by her court-ordered removal from the home. She was treated by a psychiatrist who was not subpoenaed by either side, but whose records were used extensively at the *in camera* hearing on H's competency. The defendant called a witness with a master's degree in social work at this hearing. This witness discussed the psychiatrist's notes and then was asked by defendant's counsel if he believed the psychiatrist's report created "at least some question" of undue influence by family members that would justify an independent psychiatric evaluation of the child's competency. He stated: "[I]t would be no loss to the Court to have a second opinion to ascertain whether this child has been coached or her testimony might be valid. I see no loss whatsoever that this would not and could not be done."

The trial judge ruled that H was competent to testify, without resorting to an additional psychiatric evaluation, and we upheld his decision on appeal. In *Ayers*, however, the victim was seven years old, she described the sexual assault in a detailed and graphic manner, and she was examined by a psychiatrist who was not called at trial, but whose notes were extensively used at the *in camera* competency hearing. The defendant's own witness, in answer to a leading question, refused to say that an additional psychiatric evaluation was indicated but that it would "be no loss to have a second opinion."

In the case before us today, the victim was five years old. Two years is a significant difference when we are talking about young children. In addition, unlike the *Ayers* victim, this five-year-old victim was never examined by a psychiatrist. On direct examination, the child did not remember how to play the card game "war" she and defendant were playing when the incident occurred, and she did not remember a visit she received from two protective services workers. More significantly, one of her first statements on direct examination was that defendant "raped" her, although her earlier testimony was that defendant touched her between the legs through her clothing. Then, on cross-examination, the child stated that she knew what "rape" meant, but could not answer when asked to define or explain the term.

The child witness in this case also testified on cross-examination that she did not want to tell her mother of the incident because she (the victim) was "jealous," but was unable to respond coherently to counsel's questions about the meaning of the word "jealous" and her own supposed feelings of "jealousy." Clearly, this child's ability to recall events and to testify truthfully about them was put into serious question. Also, there was significant impairment of defendant's right to confront his accuser through effective cross-examination. Repeatedly, the victim was either non-responsive or responded incoherently to cross-examination. The ability to respond to questions is an inherent part of the ability to relate facts which the Alaska Court, *supra*, discussed as one of the four requirements for testimony to be sufficiently trustworthy to be considered admissible evidence. When a victim will testify only about the fact of abuse by a defendant, and will not effectively respond to cross-examination attempting to elicit more detail of the incident or evidence relevant to impeachment, a constitutional question

of defendant's right to confront the witness against him may be raised.[8]

The *W. Va. Rules of Evidence* are supplemented in sexual abuse cases by *W. Va. Code,* 61–8B–11(c) [1984][9] which provides that neither age nor mental capacity precludes a victim of sexual abuse from testifying. Although the policy articulated in this statute is perfectly appropriate to the extent that it rectifies previous arbitrary presumptions against competency in the common law rules of evidence, *W. Va. Code,* 61–8B–11(c) [1984] may be required to yield if it conflicts with well-established due process constitutional rights.

Under the facts of this case, it was error for the trial judge not to grant defendant's motion for an evaluation by an independent psychiatrist in accordance with our decision in *Burdette v. Lobban,* and for that reason this case is reversed and remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

**8.** *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (A primary purpose of the confrontation clause of sixth amendment is to secure right to cross-examination); *Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968) (Violated confrontation clause to prevent defense counsel from asking principal witness his correct name and address).

**9.** Text *supra* at p. 616.