531 S.E.2d 340

**STATE of West Virginia Plaintiff below, Appellee,**

v.

**Henry HARRIS, Defendant below, Appellant.**

No. 26733.

Supreme Court of Appeals of West Virginia.

Submitted March 22, 2000.

Decided May 5, 2000.

Dissenting Opinion of Justice Davis, May 23, 2000.

William Ihlenfeld, II, Esq., Robert G. McCoid, Esq., Assistant Prosecuting Attorneys, Wheeling, West Virginia, Attorneys for Appellee.

Heather A. Wood, Esq., Public Defender Corp., Wheeling, West Virginia, Attorney for Appellant.

STARCHER, Justice:

## I.

### Introduction

Henry Harris was convicted of domestic battery[1] on May 3, 1999, after a bench trial[2]

---

**1.** *"Domestic battery"* is the name the law gives to certain conduct that is defined as a crime by a statute enacted by the Legislature in 1994. That statute, *W.Va.Code*, 61–2–28 [1994], reads (in part) as follows:

> (a) Domestic battery.—If any family or household member unlawfully and intentionally makes physical contact of an insulting or provoking nature with another family or household member or unlawfully and intentionally causes physical harm to another family or household member, he or she is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in jail for not more than twelve months, or fined not more than five hundred dollars, or both fined and confined.

"Battery" is a legal term for the illegal, intentional touching of another person. In this case, the circuit judge observed that Mr. Harris was actually quite fortunate to only be charged with the misdemeanor crime of domestic battery. The judge stated, when he sentenced Mr. Harris: "Quite frankly, the Defendant should have been indicted for [the felony of] Malicious Assault in this case, which carries with it a penitentiary punishment of not less than two nor more than ten years. This is a brutal beating."

**2.** A "bench trial" is a trial where a judge, not a jury, decides whether a defendant who is

before Judge Arthur Recht of the Circuit Court of Ohio County. Specifically, Mr. Harris was charged with beating up his girlfriend, to whom we will refer as Ms. M.

Judge Recht concluded that the evidence at trial showed beyond a reasonable doubt that Mr. Harris had indeed beaten Ms. M.—and, therefore, Mr. Harris was guilty of domestic battery. The judge sentenced Mr. Harris to 1 year in jail.

■ In this appeal, Mr. Harris says that his conviction and sentence should be reversed and set aside, and that he should be entitled to a new trial. Mr. Harris argues that he did not receive a fair trial because the judge improperly based his decision on hearsay evidence.[3]

## II.

### Discussion

### A.

### Statement of Ms. M.

In this case there was evidence introduced into the trial that Mr. Harris claims was improper hearsay. The evidence to which the defendant objects came from the police officers who arrested Mr. Harris. These officers testified that Ms. M. told them, at the residence where the police first encountered her, and later at a hospital where she was being treated, that Mr. Harris had beaten her several times on the night when he was arrested. The police testimony that Mr. Harris complains about, in summary, was: "She told us that Mr. Harris had beaten her."

■ Was the police testimony about what Ms. M. said to them hearsay? Using the two-part test that we describe at footnote 3, we first see that the police testified about statements that were not made in court—Ms. M. made her statements about Mr. Harris just after Mr. Harris was arrested, and a short time later at the hospital.

Second, we see that Ms. M.'s statements were presented as evidence to prove that Mr. Harris in fact beat Ms. M.—in other words, to prove the truth of the statements. So, Ms. M.'s statements that the police repeated to the court were indeed hearsay.

The question naturally arises as to why the prosecutor chose to use hearsay evidence, to prove that Mr. Harris beat Ms. M. Why didn't the prosecutor just call Ms. M. as a

charged with a crime is guilty or innocent. A defendant can waive their right to have their case decided by a jury. In this case, Mr. Harris apparently waived his jury trial right. He was first convicted in a bench trial in the Magistrate Court of Ohio County. He appealed to circuit court, where he had a second bench trial.

In this opinion, we include explanatory remarks like the foregoing that we might not put in an ordinary opinion of this Court—because this case is being studied by a high school program called LAWS, where students attend the argument of a case before this Court and discuss the case (and our opinion) in class. For the same reason, we have tried to keep legal jargon and extensive citations to a minimum.

**3.** "Hearsay evidence" is a legal term for "second-hand" evidence. Technically, hearsay evidence is defined as (1) a statement by a person that is not trial testimony, that is (2) offered as evidence to prove that the statement is true. Both (1) and (2) have to be true, to make a statement hearsay.

We can illustrate with a hypothetical case what is and what is not legal hearsay. If Bob comes to court, and he testifies in court that the moon is made of blue cheese, Bob's statement is not hearsay, because the person who made the statement (Bob) is in court, and he makes the statement in court.

However, if Sally comes to court, and she testifies in court that "Bob said last night that the moon is made of blue cheese," Bob's statement, as recounted by Sally, may *or may not* be a hearsay statement.

If the issue at trial is whether the moon is really made of blue cheese, Bob's statement *is* hearsay—because Bob is not in court to be cross-examined about why he is so sure about the composition of the moon.

However, if the issue at trial is not what the moon is made of, but whether Bob has some goofy ideas about the moon, Bob's statement as told by Sally *is not* hearsay—because Bob's statement is being offered as evidence that Bob has goofy ideas, not to prove the truth of his statement itself.

The point is, sometimes a "she said" or "second-hand" statement is hearsay, and sometimes it is not—and what is and is not legal hearsay can be difficult to understand, even for lawyers and judges.

witness? Then her statement would not be hearsay. Moreover, if Ms. M. testified in court, there would not be the possibility that the police misheard her. And if she testified, Mr. Harris's lawyer could try to pick her testimony apart, and perhaps show that she was making things up or exaggerating. Both to make the prosecution's case stronger, and to make the trial more fair for Mr. Harris, direct evidence from Ms. M. would have been more desirable.

So why did the prosecution present the hearsay evidence from the police?[4] The answer is that Ms. M. did not testify. The prosecution tried more than six times to serve a subpoena on Ms. M., but could not do so. She was unable or unwilling to come to court to repeat what the police said she told them right after the alleged crime.

We do not know why the prosecution couldn't find Ms. M. to subpoena her. And even if they had subpoenaed her, we don't know if she would have shown up at trial—and if she had shown up, we don't know what she would have said about the night that the alleged crime occurred. While we do not specifically know why Ms. M. wasn't in court at Mr. Harris's trial, we do know that in domestic violence cases it is common for the alleged victim not to "press charges" against the person who is accused or suspected of committing the domestic violence.

This legal opinion is not the place to write an essay on domestic violence. We are addressing an issue of evidence—did Mr. Harris lose his right to a fair trial because the judge relied on hearsay evidence? But we do recognize in making our decision that domestic violence cases frequently present hearsay issues. The alleged victim commonly makes an initial statement to police in which the victim says that a certain person beat them—but then later, the alleged victim often will not repeat that statement in court. Perhaps the alleged victim has or hopes to be reconciled with the person who is charged, perhaps they are fearful, perhaps they exaggerated or even lied in their initial statement. But whatever the reason, in domestic violence cases, the criminal legal system is often presented with the fact that hearsay evidence may be the only evidence there is.

The unavailability of an alleged victim or other witness to testify in a criminal case can happen in many different circumstances, not just domestic violence cases. People move, they become sick or die, or they make themselves scarce. Sometimes victims or witnesses who are physically available to testify will no longer testify to things they said earlier. People change their recollections, they forget what happened, or they just "clam up."

Because there are often circumstances where people cannot or will not come into court to testify, our legal system has evolved a number of rules that describe when we will permit hearsay evidence of what a person said out of court to be presented as evidence in a court.

Where did we get these always-evolving "rules of evidence" that allow hearsay evidence in some cases? These rules evolved from individual cases, where trial court judges either let in some hearsay evidence— or kept it out—because it seemed to be fair and necessary or not fair and unnecessary under the circumstances. Then a party who objected to the trial judge's ruling on hearsay evidence appealed. And then an appeals court (like ours) looked at what the trial judge did, and approved or disapproved of the trial judge's ruling, and wrote down their reasons in a legal opinion like this one.

Other appeals courts, facing similar issues of hearsay evidence, would read these opinions in law books—as would the law professors and scholars who write books based on court opinions. Over hundreds of years, commonly accepted (but always evolving)

---

4. Just because the police said that Ms. M. told them that Mr. Harris beat her, that testimony by the police does not guarantee that she did say that to them. Like the testimony of any other person, police testimony can be erroneous and inaccurate. Our criminal justice legal system has as a basic principle the rule that a police officer's testimony is not entitled to any special credibility just because they are a police officer.

rules have emerged from these cases and books, rules that give courts guidance as to when a court may allow hearsay evidence to be the basis for a court decision.

One of these rules, in the area of hearsay evidence, has come to be called in West Virginia the "excited utterance" rule. In our *West Virginia Rules of Evidence,* Rule 803(2) says that the following is "not excluded by the hearsay rule:"

> [a] statement relating to a startling event or condition made while the declarant [the person making the statement] was under the stress of excitement caused by the event or condition.

■ This Court set forth its most recent discussion of this rule in the case of *State v. Sutphin,* 195 W.Va. 551, 466 S.E.2d 402 (1995). In *Sutphin* we said:

> In order to qualify as an excited utterance under W.Va.R.Evid. 803(2): (1) the declarant must have experienced a startling event or condition; (2) the declarant must have reacted while under the stress or excitement of that event and not from reflection and fabrication; and (3) the statement must relate to the startling event or condition.

Syllabus Point 7, *State v. Sutphin,* 195 W.Va. 551, 466 S.E.2d 402 (1995).

■ In applying this rule to Mr. Harris's appeal, the question that this Court must decide is: was Judge Recht correct in concluding that the statements that the police testified that Ms. M. made qualified as "excited utterances?" If Ms. M.'s statements were "excited utterances," then it was permissible for the judge to allow the statements into evidence, and to base his decision on the statements—even though the statements were hearsay.

To make this decision, we must look at what evidence the judge had about when and how the statements were made. We must ask: did this evidence, if the judge believed it, allow the judge to conclude that Ms. M.'s statements, that Mr. Harris beat her, were excited utterances?

The testimony before the judge was that Ms. M. had a broken nose, profuse bleeding from the nose, and an eye that was swollen shut. The photographs of Ms. M. strongly suggested that she had received a severe beating. There is no doubt that such a beating and such injuries are a "startling event."

Officer Schultz testified that he arrived at the scene of the alleged beating "within two minutes" of having received notification from dispatch. He testified that "less than ten minutes" had elapsed between the time that he had arrived at the scene and the time he encountered Ms. M. Upon encountering her, he noted that she was "upset [and] crying," that she was "bleeding from the nose quite heavily," and that the blood that he observed about her was "fresh." Officer LaCava similarly testified that, upon encountering Ms. M., he observed that she was "bleeding from the nose and mouth area." Significantly, Schultz testified that Ms. M.'s eye was noticeably swelling shut in his presence. Ms. M.'s statements to the police at her residence were clearly made while she continued to experience excitement over the startling event.

With respect to Ms. M.'s statement at the hospital emergency room, reaffirming her statements made to the officers while at her residence, Officer Schultz testified that his hospital interview of Ms. M. occurred less than 30 minutes from the time that he left her at her residence, and that she was still "very upset and crying" during the interview. These statements also clearly qualified as excited utterances.

We conclude that the circuit court judge did not make a legal error in applying the "excited utterance" rule to the statements of Ms. M. The judge was on solid ground in basing his decision to convict Mr. Harris on the statements by Ms. M. to which the police testified—even though she did not testify herself at trial.

### B.

*Statement of "Someone in the Crowd"*

■ Mr. Harris also argues that the circuit court considered other hearsay evidence at his trial that made the trial unfair. This evidence came in when the police were describing how they first came to the scene, where they found the injured Ms. M. Specifically, the police testified that there was a

crowd of 10 or so people on the scene, and that one of them (no one knew who) shouted to the police that Mr. Harris had just beaten Ms. M.

Was this alleged statement to the police by an anonymous person in the crowd hearsay? It was an out-of-court statement, so it meets the first part of the test. Was this statement offered to prove the truth of the statement? That is, was it offered to prove that Mr. Harris beat Ms. M.—or was it offered in evidence just to explain why the police went after Mr. Harris?

While we cannot tell clearly from the record why the statement was offered, we will assume that it was offered to help prove that Mr. Harris beat Ms. M. Therefore, it was hearsay.

If this "crowd member" statement was hearsay, then our next question is: did the statement qualify as an "excited utterance?"

Here, the question is far more difficult than the case of Ms. M.'s statements. The circuit court had plenty of evidence that showed that Ms. M.'s statements were "excited utterances." But the circuit court had much less evidence to go on, in evaluating the circumstances of the anonymous "crowd member" statement.

For one thing, the court had no idea of the identity of the person who the police testified made the statement. For all the court knew, that person, if they indeed said what the police said, was repeating something that someone else had told them, and had not seen anything directly.

This situation was confronted by the Supreme Court of New York, Appellate Division, in the case of *People v. Alexander,* 173 A.D.2d 296, 569 N.Y.S.2d 689 (1991). In that case, Donald Alexander was convicted of burglary of an apartment. The trial judge allowed a police officer to testify that people in a crowd outside the apartment building had told the police that they had seen Mr. Alexander climb out the window of the burglarized apartment.

The New York Appeals Court concluded that the police testimony that "people in the crowd said that Mr. Alexander climbed out the window" was clearly hearsay, because the crowd statement was an out-of-court statement, and it was offered to prove the truth of the statement—that Mr. Alexander had indeed climbed out the window.

The next question the New York court considered was whether the "excited utterance" exception to the rule against hearsay (New York calls this the "spontaneous declaration" exception) allowed the anonymous "crowd member" statement to be used as evidence against Mr. Alexander.

The New York court noted that there was no proof of the identity of the crowd members, and no proof that they actually had an adequate opportunity to observe the events they described. The New York court decided that under these circumstances, the "excited utterance" exception did not apply— because the trial court did not have a sufficient basis to evaluate the circumstances of the person who made the statement.

We agree with the New York court that the situation of an unavailable, anonymous, unknown declarant who makes a hearsay statement should present serious concerns for a court considering whether to admit the statement into evidence.

In another similar case, another appeals court stated that when the hearsay declarant is not only unavailable but is also unidentified, the party seeking to introduce the hearsay statement carries a heavier burden to demonstrate the statement's circumstantial trustworthiness. *Miller v. Keating,* 754 F.2d 507, 510 (3d Cir.1985).

Unquestionably, it goes against our long-standing legal tradition, of insisting on a strict and high standard of proof and evidence in criminal cases, to allow people to be convicted of crimes based on the statements of anonymous people who do not appear in court to make their accusations.

■ Of course there are many well-recognized and necessary exceptions to the rule that hearsay is generally prohibited. But the hearsay rule itself is crucial to the fairness of a criminal trial, where it should be applied strictly and its exceptions construed

narrowly and in favor of the criminal defendant.

The distinguished law professor Frank Cleckley of the West Virginia University College of Law, and a former Justice of this Court, states in his classic text on West Virginia evidence law that "[a]n excited utterance is not admissible under Rule 803(2) unless the utterance is based upon personal knowledge of the declarant. See *State v. Golden*, 175 W.Va. 551, 336 S.E.2d 198 (1985)[.]" Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers*, Vol. 2, 3d ed., Sec. 8–3(B)(2)(d). p. 201. Applying this principle to the record before us, it appears that the trial court did not have a solid basis to conclude that the "crowd member's" statement, that Mr. Harris had beaten Ms. M., was based on that crowd member's personal knowledge.

■ Based on the foregoing, we hold that in a criminal case when a court is evaluating whether to apply the "excited utterance" exception of the *W.Va.R.Evid.* 803(2) to a hearsay statement by an unknown, anonymous, declarant, the court should ordinarily conclude that the statement does not meet the criteria for the 803(2) exception, unless the statement is accompanied by exceptional indicia of reliability and the ends of justice and fairness require that the statement be admitted into evidence.

In the *Alexander* case, the New York court reversed Mr. Alexander's conviction because of the hearsay that was used in his trial, and remanded the case for a new trial in which the "crowd" statements could not be put into evidence against Mr. Alexander. Specifically, the New York court reversed Mr. Alexander's conviction because "the only evidence placing [Mr. Alexander] directly at the scene of the crime was the crowd's hearsay statement." 173 A.D.2d at 298, 569 N.Y.S.2d at 691.

■ However, in the case before us, the anonymous crowd member's alleged statement that Mr. Harris had just beaten Ms. M. was not the only evidence that directly implicated Mr. Harris. Ms. M. herself, and other circumstantial evidence, directly and clearly implicated Mr. Harris.

Additionally, when we read the trial judge's statement of his reasons for finding Mr. Harris guilty, the judge does not mention at all the "crowd member's" statement. Rather, the only "statement" that the judge refers to is the police testimony about what Ms. M. told them.

### III.

#### *Conclusion*

We conclude that. while the trial court technically erred in allowing the crowd statement to be put in evidence to prove that Mr. Harris beat Ms. M., because the trial judge did not consider that evidence in making his decision, that evidence did not contribute to the conviction of Mr. Harris. The trial judge's minor error did not deprive Mr. Harris of his right to a fair trial. We therefore affirm Mr. Harris's conviction for domestic battery, and his sentence based on that conviction.

Affirmed.

DAVIS, Justice, concurring:[1]

(Filed May 23, 2000)

I concur with the majority opinion in this case insofar as it affirms the conviction and

---

1. I had initially intended to concur in part and dissent in part to the majority decision in this case. However, after careful reflection I have chosen simply to concur. Justice Potter Stewart once remarked that "[i]n these circumstances the temptation is strong to embark upon a lengthy personal *apologia*." *Boy's Mkts. Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 255, 90 S.Ct. 1583, 1595, 26 L.Ed.2d 199, 213 (1970) (Stewart, J., concurring). Those remarks somewhat underscore my thoughts as I must confess at this time that initially I was in error in indicating I would issue a partial dissent in this case. However, like Justice Stewart, I take solace in an aphorism of Justice Felix Frankfurter: "Wisdom too often never comes, and so one ought not to reject it merely because it comes late." *Henslee v. Union Planters Nat'l Bank & Trust Co.*, 335 U.S. 595, 600, 69 S.Ct. 290, 293, 93 L.Ed. 259, 264 (1949) (per curiam) (Frankfurter, J., dissenting).

sentence. The majority correctly held that the statement attributed to Ms. M. was properly admitted during the trial under the excited utterance exception to hearsay found in West Virginia Rules of Evidence, Rule 803(2). I also believe that the majority appropriately concluded that it was error to admit the hearsay statement of an unknown and anonymous declarant, but that such error was harmless. The issue which compels me to write separately involves the formulation of Syllabus point 2 of the majority opinion and the analysis that led to its creation. This new Syllabus point permits a statement attributed to an unknown and anonymous declarant to be admissible under the excited utterance rule. While I agree that such an extension of the excited utterance rule is warranted, I believe a more concise analysis of this issue is required in order to provide guidance to trial courts.

### A. The Excited Utterance Exception

Prior to this Court's adoption of the West Virginia Rules of Evidence, the test that was used for evaluating a statement as a "spontaneous declaration" was set out in Syllabus point 2 of *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980), *modified on other grounds, State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991):

> An alleged spontaneous declaration must be evaluated in light of the following factors: (1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6) it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made.

*See* Syl. pt. 2, *State v. Murray*, 180 W.Va. 41, 375 S.E.2d 405 (1988). Thereafter, this Court adopted the Rules of Evidence, incorporating the spontaneous declaration hearsay exception into Rule 803(2), the excited utterance exception:

> The following [is] not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .
>
> (2) Excited Utterance.—A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

W. Va. R. Evid. 803(2). *See also* Syl. pt. 1, in part, *State v. Smith*, 178 W.Va. 104, 358 S.E.2d 188 (1987) ("Rule 803(2) of the West Virginia Rules of Evidence correctly contains the heart of the hearsay exception that was formerly called a spontaneous declaration and which is now termed the excited utterance exception to the hearsay rule.").

Explaining the rationale underlying the rule version of this hearsay exception, this Court stated succinctly in *State v. Jones*, 178 W.Va. 519, 522, 362 S.E.2d 330, 333 (1987), that "[t]he excited utterance exception is predicated on the theory that a person stimulated by the excitement of an event and acting under the influence of that event will lack the reflective capacity essential for fabrication." Thus, "a guarantee of reliability surrounds statements made by one who participates in or observes a startling event, provided they are made while under the stress of excitement." *Smith*, 178 W.Va. at 109, 358 S.E.2d at 193.

In light of Rule 803(2)'s adoption, its employment of the new term "excited utterance," and our prior body of law concerning "spontaneous declarations," this Court recognized the need for a more concise test for this hearsay exception. Therefore, in Syllabus point 7 of *State v. Sutphin*, 195 W.Va. 551, 466 S.E.2d 402 (1995), we refined the test to be used in evaluating a statement as a

spontaneous declaration or an excited utterance:

> In order to qualify as an excited utterance under W. Va. R. Evid. 803(2):(1) the declarant must have experienced a startling event or condition; (2) the declarant must have reacted while under the stress or excitement of that event and not from reflection and fabrication;[2] and (3) the statement must relate to the startling event or condition.[3]

(Footnotes added). The *Sutphin* test for excited utterance did not mean a total rejection of the *Young* test. As was stated in *Sutphin:* "We are not rejecting the six-factor test recited in *Young;* however, we believe that the three-part analysis synthesizes these six factors and provides for a more efficient analysis of Rule 803(2)." *Sutphin,* 195 W.Va. at 564, 466 S.E.2d at 415.

### B. Extending the Excited Utterance Exception

The case *sub judice* required the Court to decide for the first time whether a statement made by an unknown and anonymous declarant may be admitted into evidence under the excited utterance exception to hearsay contained in Rule 803(2). In determining the resolution of this issue, the majority opinion

relied upon guidance from the decisions in *People v. Alexander,* 173 A.D.2d 296, 569 N.Y.S.2d 689 (1991), and *Miller v. Keating,* 754 F.2d 507 (3d Cir.1985).[4]

The decision in *Miller* was a civil action involving an automobile accident. During the trial, the district court admitted into evidence a statement made by an unidentified declarant at the scene of the accident, which amounted to an allegation that the plaintiff was at fault. On appeal the plaintiff assigned error to the admission of the statement as an excited utterance. The Third Circuit Court of Appeals rejected the contention "that statements by unidentified declarants are ipso facto inadmissible under Fed. R.Evid. 803(2)," finding that "[s]uch statements are admissible if they otherwise meet the criteria of 803(2)." *Miller,* 754 F.2d at 510.[5] In rendering this decision, the Third Circuit cited various criteria to be used in evaluating a statement as an excited utterance: "(1) a startling occasion, (2) a statement relating to the circumstances of the startling occasion, (3) a declarant who appears to have had opportunity to observe personally the events, and (4) a statement made before there has been time to reflect and fabricate." *Id.* (citations omitted). In

---

2. In determining the second prong of *Sutphin's* test, the Court held in Syllabus point 8 of the opinion:

> Within a W. Va. R. Evid. 803(2) analysis, to assist in answering whether a statement was made while under the stress of excitement of the event and not from reflection and fabrication, several factors must be considered, including: (1) the lapse of time between the event and the declaration; (2) the age of the declarant; (3) the physical and mental state of the declarant; (4) the characteristics of the event; and (5) the subject matter of the statements.

195 W. Va. 551, 195 W.Va. 551, 466 S.E.2d 402.

3. We borrowed the *Sutphin* test from principles that are used by some federal courts in analyzing a purported excited utterance under Rule 803(2) of the Federal Rules of Evidence. *See Morgan v. Foretich,* 846 F.2d 941, 947 (4th Cir.1988); *United States v. Moore,* 791 F.2d 566, 570 (7th Cir. 1986); *David v. Pueblo Supermarket,* 740 F.2d 230, 235 (3d Cir.1984).

4. I find little use for the decision in *Alexander* as guidance for my determination to join the majority in carving out an extension to the excited

utterance rule. *Alexander* was an important decision for the courts in New York, insofar as it abandoned a rule in that jurisdiction which had forbidden admission of a statement made by a bystander as a spontaneous declaration. Key to the adoption of the New York rule to allow a bystander's statement as a spontaneous declaration was "proof of the identity of the declarant[.]" *Alexander,* 173 A.D.2d at 298, 569 N.Y.S.2d at 691. The extension of the excited utterance rule approved by the Court in the instant proceeding, however, allows the admission of a statement made by an "unknown and anonymous" declarant.

5. *Not all federal courts interpret Rule 803(2) as admitting a statement by an unidentified declarant. See Meder v. Everest & Jennings, Inc.,* 637 F.2d 1182, 1186 (8th Cir.1981); *Miller v. Crown Amusements, Inc.,* 821 F.Supp. 703, 705 (S.D.Ga. 1993); *Cummiskey v. Chandris, S.A.,* 719 F.Supp. 1183, 1187–88 (S.D.N.Y.1989) aff'd, 895 F.2d 107 (2d Cir.1990). Furthermore, the United States Supreme Court has not yet resolved this conflict among the federal courts.

applying this test to the facts of the case, the *Miller* court found that there was no evidence to establish the third factor, personal knowledge, where the declarant's identity was unknown.

Deviating somewhat from the *Miller* holding, the majority herein has set out, in Syllabus point 2, the following standard regarding the admission of a statement by an unknown and anonymous declarant under W. Va. R. Evid. 803(2):

> When a court in a criminal case is evaluating whether to apply the "excited utterance" exception of W. Va. R. Evid. 803(2) to a hearsay statement offered against the defendant by an unknown, anonymous, declarant, the court should ordinarily conclude that the statement does not meet the criteria for the 803(2) exception, unless the statement is accompanied by exceptional indicia of reliability and the ends of justice and fairness require that the statement be admitted into evidence.

In light of the Third Circuit's limited decision in *Miller* and the majority's extension of the excited utterance rule in the instant appeal, I am concerned with the broad and imprecise formulation of our new holding. Accordingly, I believe it is necessary to clarify these inconsistencies to help trial courts apply this new rule.

The court in *Miller* used a four factor test in evaluating a statement by an unidentified declarant as an excited utterance. *See* 754 F.2d at 510. The general test for excited utterance used by this Court, as formulated in *Sutphin*, delineated only three factors. *See* Syl. pt. 7, 195 W.Va. 551, 466 S.E.2d 402.

However, a careful reading of the *Sutphin* test reveals that it includes each of the four factors set out in *Miller*. The factor in *Miller* which at first blush seems to be absent from the *Sutphin* factors is *Miller's* third factor: "a declarant who appears to have had opportunity to observe personally the events." *Miller's* third factor is actually a part of *Sutphin's* first factor: "the declarant must have experienced a startling event or condition." In other words, *Miller's* "opportunity to observe personally" factor is the same as *Sutphin's* "must have experienced" factor.

Although the majority opinion in this case is not clear on the issue, each of the *Sutphin* factors must be used in evaluating a statement by an unknown and anonymous declarant. Nevertheless, the majority has also required another factor: "the ends of justice and fairness require that the statement be admitted into evidence."[6] Therefore, as I interpret the majority opinion, even if the *Sutphin* factors are satisfied, a trial court may still exclude an unknown and anonymous statement if the ends of justice and fairness do not require that the statement be admitted into evidence.

With the foregoing comments in mind, I concur in the decision reached by the majority in this case.

---

**6.** The majority opinion also holds that such a statement must be "accompanied by exceptional indicia of reliability." I have no idea what this means, and the majority opinion does not explain the phrase. I believe the majority's use of "accompanied by exceptional indicia of reliability" will leave trial courts wandering in the dark in search of evidence of indicia more stringent than the *Sutphin* test itself. Consequently, I do not believe the "accompanied by exceptional indicia of reliability" is a practical part of the analysis because it is redundant of the *Sutphin* test.